## FRIEZEN *v.* ALLEMANIA FIRE INS. CO.

*(Circuit Court, W. D. Wisconsin. 1887.)*

1. INSURANCE — FIRE — ACTION ON POLICY — SIX MONTHS' LIMITATION — FROM WHAT DATE RECKONED.

A policy of fire insurance provided that an action to recover upon the policy for a loss should be commenced within six months after the fire occurred, and also that arbitrators should be appointed to ascertain the amount of loss, and no action should be brought until they had made an award, and nothing should be due and payable under the policy until 60 days after the completion of all the requirements of the policy. *Held*, these provisions should all be construed together, and the six-months limitation be reckoned, not from the occurrence of the fire, but from the expiration of the 60 days, when the loss was due and payable. Under any other construction the insured's right of action might be barred before it had accrued.

2. SAME — INTEREST — ALIENATION — "SALE, TRANSFER, OR CONVEYANCE" — MORTGAGE.

The policy also provided that "the interest of the insured is the entire, unconditional, and sole ownership of the property, and that the policy shall become void by the sale or transfer, or any change in title or possession, of the property insured, whether by legal process or judicial decree, or voluntary transfer or conveyance," etc. At the time the policy was issued there was an outstanding mortgage on the property, and the insured, after receiving the policy, executed another mortgage upon it. *Held*, neither of these mortgages was a voluntary *sale, transfer*, or *conveyance* of the property within the meaning of the policy, nor did either have the effect to vitiate the policy; especially as the insured was asked no questions as to any outstanding mortgage, and made no agreement as to future ones.

At Law.

*H. W. Chynoweth*, for plaintiff.

*Stevens & Morris*, for defendant.

BUNN, J. This is an action brought to recover a loss under a policy of insurance against fire issued by the defendant company to one C. Friezen, and afterwards duly assigned to the plaintiff. A jury was waived by the parties in writing, and the case tried before the court. The facts are stipulated, and are as follows: The insurance company have had an agent in Wisconsin, located at Milwaukee, since 1880. The policy was duly issued by the defendant company on April 8, 1885, by which they insured the said C. Friezen against loss by fire upon his two-story frame hotel building and addition, situate in Glyndon, Minnesota, and the furniture therein, in the sum of $1,200. Eight hundred dollars of

this was upon the building, and four hundred upon the furniture therein, beds, bedding, etc.   On June 23, 1885, the building and furniture insured were accidentally and by misfortune totally destroyed by fire. The insured, immediately upon the happening of the fire, gave notice thereof to the company, and as soon as possible, to-wit, on thirty-first July, made and rendered to the defendant proofs of the loss, amounting to $1,098.30.   The plaintiff, upon assignment of the policy and cause of action to her, demanded payment, but the company declined to pay. On the tenth of September, 1885, the defendant company, through its agent at Chicago, demanded of the insured that he submit to an examination under oath touching the loss, and insisted that the company had the right to have such examination take place at their office at Pittsburgh, Pennsylvania, but offered to allow the insured to be examined at their office in Chicago.   The insured offered to submit to examination at his home in Glyndon, or at any point in Minnesota at a reasonable distance from his home.   They could not agree upon the place for examination, and afterwards, in February, there was some move to arbitrate the question; the insured offering and demanding that it be arbitrated, and setting a day for such purpose, and notifying the defendant company.   But no arbitration or examination was ever had.   There was a chattel mortgage for $1,100 executed by the assured on March 18, 1885, upon the furniture of the hotel, and which was still subsisting at the time the policy was issued; and after the issuance of the policy, on June 17, 1885, Friezen executed a second mortgage upon a portion of the property, to-wit, the pool-table and some other articles of saloon furniture, to secure the sum of $115.   There was no delivery or change of possession of the property under either mortgage, and nothing to show when either of them was to become due.

The defendant makes three defenses to the action:   (1) That the court has no jurisdiction of the subject-matter of the action, or of the defendant corporation; (2) that the action is barred by the six-months limitation provided for in the policy for bringing the action; (3) that the plaintiff is barred from recovering on account of the two mortgages upon the personal property on which $400 of the insurance was placed.

This case was before the court on a former occasion upon demurrer, when the same questions as to jurisdiction of the court were relied upon and decided, and it was then held that, as the action was transitory in its nature, it was not necessary to bring suit in Minnesota, where the property was situate; and that, as the summons was served upon the company's agent in Wisconsin, and the company, by its attorneys, had put in a general appearance in the action, and taken steps to remove the case into this court, that the court had acquired jurisdiction of the case and of the person of the defendant.   I see no reason for changing the ruling then made.   See *ante,* 349.

Bearing upon the other defenses above named, are the following provisions in the printed portions of the policy:

"(1) The assured hereby covenants and agrees that any application, plan, survey, or description referred to in this policy is true, and shall be and form

part of this policy, and a warranty by the assured that no fact material to the risk, or relating to its condition, situation, or occupancy, has been concealed nor misrepresented, and that the interest of the assured therein has been truly stated to this company; it being understood, unless otherwise expressed in this policy, that the interest of the assured is the entire, unconditional, and sole ownership of the property, and that all buildings intended to be insured by this policy stand on ground owned in fee-simple by the assured.

"This policy shall become void and of no effect by the sale or transfer, or any change in title or possession, of the property insured, whether by legal process or judicial decree, or voluntary transfer or conveyance.

"The amount of sound value and of the loss or damage shall be determined by agreement between the company and the assured; but if at any time differences shall arise as to the amount of any loss or damage, or as to any question, matter, or thing, (except the validity of the contract, or the liability of the company,) concerning or arising out of this insurance, every such difference shall, at the request of either party, be submitted, at equal expense of the parties, to competent and impartial persons, one to be chosen by each party; and the two so chosen shall select an umpire to act with them in case of their disagreement; and, until such an appraisement is held, the loss shall not be payable, and the award in writing of any two of them shall be binding and conclusive as to the amount of such loss or damage, or as to any question, matter, or thing so submitted.

"The assured shall, whenever required, submit to examinations under oath by any person appointed by this company, and subscribe to such examination when reduced to writing, and shall also, as often as required, produce their books of account and other vouchers, or certified copies thereof, and exhibit the same for examination at the office of this company, in the city of Pittsburgh, and permit extracts and copies thereof to be made.

"As soon after the fire as possible, proofs of loss, being a particular statement of the loss, shall be rendered to the company, signed and sworn to by the assured, stating such knowledge or information as the assured has been able to obtain as to the origin and circumstances of the fire, and also stating the title, and all other insurance covering any of the property, and the copy of the written parts of all policies, and the occupation of the entire premises. The assured shall also furnish such further particulars, and such certificates of a magistrate or officer charged with the duty of investigating fires, as may be required. And if loss or damage be claimed upon buildings, fixtures, or machinery, the assured shall, if required, furnish plans and specifications thereof, which shall form a part of the particular statement or proof of loss. The claim shall not be due and payable until sixty days after the full completion of all the requirements herein contained.

"It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner therein provided, and after proofs of loss have been rendered in due form to the company, nor unless such suit or action shall be commenced within six months next after the fire has occurred."

1. Is the action barred by the six-months limitation in the policy? The loss occurred on June 23, 1885. Proofs of loss were made and rendered to the company July 31, 1885. By the provisions of the policy the loss was not payable until 60 days after proof of loss, or until September 30, 1885. The summons was served on February 24, 1886, and a general appearance in the action made by the company on March 2d following, so that, if the six-months limitation commenced to run from

the day of the fire, the action is barred. If from the time when the action might have been commenced, which was 60 days after proofs of loss, or September 30th, then the action was brought in time.

It is evident a literal construction of the six-months clause, standing apart from the other provisions of the policy, would bar the action. But I am of opinion that all the provisions should be considered together; and, if possible, such a reasonable construction given them as will give proper effect to each part, because it should not be considered that it was in the contemplation of the parties that any one of these several provisions should be .inoperative. Now, if a literal construction shall be given to the six-months clause, what will be the effect? Here are various provisions bearing materially on the question of time,—that allowing examination under oath, and the production of books and vouchers, and more especially the provisions respecting arbitrators, and the one giving 60 days in which to pay after all these things have taken place, and the amount of loss fixed by an award. An arbitration is like a lawsuit in this, at least, that it takes time. Arbitrators must be agreed upon who will take upon themselves the duties of investigating the facts, and making a just award; witnesses must be had; adjournments and continuances must have been contemplated,—for these are among the usual incidents to an arbitration. So that it is easy to see, considering what the parties must have had in view, without fault on the part of either, and using all the diligence in their power, four months might very well be taken in arbitrating the question of loss and all the other questions between them before a final award could be reached. Then no action would lie until 60 days more had elapsed, when the 6 months from the time of the fire would be gone, and the assured's right of action gone with it, if a literal construction is to be given to this provision. Would not such a construction defeat the provision itself, because a reasonable time must be given for the assured to assert his right? It is not in the power of the parties to give a right of action in case of a loss, and at the same time provide that there shall be no reasonable time in which to assert it.

It will be seen that, under such a construction, four months is the utmost time the assured would have in which to bring his action, allowing that no time at all were taken for making proofs of loss, for examination under oath, and for arbitration. This would seem like a rather short time, and, if it were yet an open question, it might be well to consider how far the limitation provided by law, which in this case would be six years, may be shortened and shrunk by the greed of one or other of the contracting parties. But the law is settled that it is competent for the parties to agree upon a time shorter than that allowed by law, provided some reasonable time is given in which the party may assert his right in court.

In *Riddlesbarger* v. *Hartford Ins. Co.*, 7 Wall. 386, the limitation was 12 months, and the court sustained it. In *McFarland* v. *Peabody Ins. Co.*, 6 W. Va. 427, the provision was 6 months, and the money due 90 days after proof of loss made. The company offered to prove that

the suit was begun (as the fact was) more than 6 months after the 90 days had expired, when the debt became due. The court held the provision binding.

There are many other cases where a twelve-months and six-months limitation have been sustained; but in all cases I have been able to find, excepting two, where the question has been raised, the six months or twelve months have been held to run from the time the cause of action accrues, and not from the time of the loss. Such a construction seems to be unavoidable in order to give the assured any reasonable time after the debt becomes due in which to bring his action.

The company having secured itself against action brought for 60 days after the amount of loss is fixed by arbitration, it could hardly have been within the contemplation of the parties that this same 60 days, during which the remedy is suspended, should constitute a part of the six months which the assured is to have in which to bring his action. Indeed, there is no legal liability until the 60 days have expired, and certainly there could be no great propriety in providing for a time for bringing the action which should cover a period when there was no legal liability on the part of the company to be sued. It would be something more than absurd to give the insured six months in which to bring action, and at the same time provide that a large part or the whole of the time so given should be taken up by a period when there is no legal liability, and no action can be brought. It would savor too much of cutting off the remedy entirely. Such a construction would make the different provisions as to time wholly inconsistent with one another. It is, I think, more rational to say, considering these provisions as to time altogether, that what the parties contemplated was that, after the loss became due and payable, the assured should have six months within any part of which time he might bring his suit. Such a construction preserves the rights and remedies of the parties, and does justice to both; while the other construction might in many cases, without any fault on the part of the assured, cut off his remedy by giving him no time, or an unreasonably short one, in which to assert it, which the law would not allow, as being against public policy. The language of these provisions is that of the company; and, if there is any uncertainty about the meaning, it should be construed most strongly against the party using it, and in favor of the assured as he might be reasonably presumed to have understood it. See the following leading cases, where the same construction has been placed upon similar provisions: *Barber* v. *Fire & Marine Ins. Co. of Wheeling,* 16 W. Va. 658; *Chandler* v. *St. Paul Fire & Marine Ins. Co.,* 21 Minn. 85; *Steen* v. *Niagara Fire Ins. Co.,* 89 N. Y. 315; *Spare* v. *Home Mut. Ins. Co.,* 17 Fed. Rep. 568; *Hay* v. *Star Fire Ins. Co.,* 77 N. Y. 235; *Mayor of New York* v. *Hamilton Fire Ins. Co.,* 39 N. Y. 45; *Ellis* v. *Council Bluffs Ins. Co.,* 64 Iowa, 507, 20 N. W. Rep. 782; *Longhurst* v. *Star Ins. Co.,* 19 Iowa, 364; *Hennessey* v. *Manhattan Fire Ins. Co.,* 28 Hun, 98.

We have been referred by defendant's counsel to a manuscript opinion by Judge McAllister in the appellate court for the First Illinois dis-

trict, in the case of *Allemania Ins. Co.* v. *Little*, in an action upon a policy like the one in suit, and issued by the same company, where a different ruling was had, though this precise question does not seem to have been presented. In that case the fire occurred on August 23d. The action was begun February 24th following, six months and one day after the fire. The trial court was asked by the defendant company to instruct the jury that if they believed from the evidence that the property was destroyed by fire, and that such fire occurred on the twenty-third day of August, and that suit was not commenced until the twenty-fourth of February, then the plaintiff could not recover. This instruction the court refused to give as asked, but modified it, by telling the jury that what the facts were as to when the fire occurred, and when the property was destroyed, must be determined by the jury by a consideration of all the evidence in the case. A verdict being found for the plaintiff, the appellate court reversed the case, holding that the instruction asked by the defendant should have been given; that the six months began to run from the day the fire first occurred, August 23d, and that there was no question to submit to the jury as to when the property was destroyed, and that the instruction given on that question was erroneous. Probably the reason why the question raised in the case at bar was not presented to the court, and decided in the *Case of Little*, was that the supreme court of Illinois, in the case of *Johnson* v. *Humboldt Ins. Co.*, 91 Ill. 92, had already decided the same question adversely to the construction now contended for by the assured, which decision was binding on the appellate court. That case and the case of *Fullam* v. *New York Union Ins. Co.*, 7 Gray, 61, are the only ones I have been able to find, though there may be others, which hold that the clause limiting the time for bringing the action should receive a literal construction according to its plain meaning standing alone, and without reference to the other provisions bearing on the question of time. They are both expressly disapproved by the New York court of appeals in *Steen* v. *Niagara Fire Ins. Co.*, 89 N. Y. 315. And the Illinois case is disapproved in *Barber* v. *Fire & Marine Ins. Co.*, 16 W. Va. 658. The court in each of those cases appear to have followed the usual rule of interpretation that a provision of a written instrument is to be construed according to the natural and plain meaning of the words, without reference to another qualifying rule that where there are different clauses which, according to such rule of interpretation, would be in conflict with each other, they should all be construed together, and such a construction given them, if possible, as will give proper effect to each part, without doing violence to either.

2. Was the policy made void by the mortgages upon the personal property, one executed before and the other after the risk was taken? It seems quite evident, as was said by the court in *Commercial Ins. Co.* v. *Spankneble*, 52 Ill. 53, that a party claiming such a forfeiture is *stricti juris*, and must bring himself strictly within the clause of forfeiture to defeat the right. These various provisions in the policy, bristling with conditions intended to hedge the right of the underwriters, and contained

in the printed portion of the policy, are put there by the company, and for its benefit, before any contract of insurance is made. If there is any ambiguity in the language so as to render it capable of two constructions, that should be adopted which will give effect to the policy, and carry out the intention of the parties, because it must be considered, in the absence of fraud, to have been within the contemplation of the parties when the insurance company has issued its policy, and accepted the premium, that in case of a loss the company is to pay, unless there has been some clear and manifest breach of the conditions on the part of the insured which works a forfeiture of his right.

Now, the language of the policy in regard to title is that "the interest of the assured is the entire, unconditional, and sole ownership of the property, and that the policy shall become void by the sale or transfer, or any change in title or possession, of the property insured, whether by legal process or judicial decree, or voluntary transfer or conveyance." Was the mortgagor the entire and sole owner of the property within the meaning of the first clause, when the policy was issued, or does the subsequent mortgage constitute a voluntary sale, transfer, or conveyance of the property, the mortgage not being foreclosed, nor the possession of the assured disturbed? I think both branches of this inquiry must be answered in favor of the insured. A mortgage, unaccompanied by any change in the possession, is not a sale, transfer, or alienation within the ordinary acceptation of these terms. The mortgagor is still the owner. A mortgage is an incumbrance upon the property created for the purpose of securing the payment of money, but it is not a sale or alienation, within the usually accepted meaning of those words. The mortgagor still retains the exclusive possession and the general right of property, and has the same insurable interest that he had before the mortgage was executed, as, if the property burns, his debt remains unpaid, and the entire loss falls on him. It does not appear any questions were asked the insured in regard to incumbrances upon the property; and, if it had been intended that he should guaranty that the property was free from incumbrance, and that no incumbrance should in future be put upon it, it would have been an easy matter to have used language to convey such a meaning clearly As nothing is said of mortgages, and the language used does not necessarily or fairly include mortgages, it must be presumed that the parties did not intend to provide against them.

If a mortgage constitutes an alteration or change in title, it is not such a one as is specified in the policy. It is not a sale or transfer, either by legal process or judicial decree, or by voluntary transfer or conveyance. The terms "entire and sole ownership," as used in the policy, is calculated to distinguish the ownership which the assured must have from that of a part ownership, which the policy would not allow. Nor is the interest of the mortgagor other than unconditional, as is that of a pledgee or mortgagee, which is conditional. Of course, if the debt is not paid, the mortgagee may seize and sell the property; but so it might also be seized and sold on attachment or execution, which sale in either case would come within the conditions of this provision. It was lately ruled

in the Eighth circuit, in the case of *Waller* v. *Northern Assur. Co.*, 10 Fed. Rep. 232, under a similar clause, where the interest of the assured was that of a mortgagee in possession instead of being the general owner, that a failure to disclose that fact rendered the policy void. The interest of the assured was a conditional one, and he was not the owner, whereas he had stipulated that his interest was unconditional, and that he was the sole owner.

It seems to me clear upon principle, and I think the adjudged cases quite uniform in holding, that either a chattel or real-estate mortgage executed before or after the policy is issued, does not come within such a provision as that contained in the policy. I refer to a few of the leading cases: *Kronk* v. *Birmingham Ins. Co.*, 91 Pa. St. 300; *Judge* v. *Connecticut Ins. Co.*, 132 Mass. 521; *Carson* v. *Jersey City Ins. Co.*, 39 Amer. Rep. 584; *Commercial Ins. Co.* v. *Spankneble*, 52 Ill. 53; *Hartford Ins. Co.* v. *Walsh*, 54 Ill. 164; *Aurora Fire Ins. Co.* v. *Eddy*, 55 Ill. 213; *Loy* v. *Home Ins. Co.*, 24 Minn. 315; *Smith* v. *Monmouth Ins. Co.*, 50 Me. 96; *Shepherd* v. *Union Mut. Ins. Co.*, 38 N. H. 232; *Byers* v. *Insurance Co.*, 35 Ohio St. 606; *Van Deusen* v. *Charter Oak Ins. Co.*, 1 Rob. (N. Y.) 55.

The plaintiff is entitled to a judgment for the sum of $1,098.30, with interest at 7 per cent. from September 30, 1885.