ARNOLD C. MESSLER vs. WILLIAMSBURG CITY FIRE INS. CO.

JANUARY 31, 1920.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

(1)  Fire Insurance.  Limitation Clause.

Where a policy of fire insurance contained a provision that "no suit or action on this policy for the recovery of any claim shall be sustainable . . . unless commenced within twelve months next after the fire," if the insured acted diligently and in good faith and there was no adjustment of the loss within a year after the fire, the fact that more than a year elapsed before the suit, is not a bar.

(2)  Fire Insurance.  Appraisal.

In an action on a policy of fire insurance, defendant's request to charge that "if on or before Jan. 9, 1913 the appraisal failed through no fault of defendant and no request was made by insured for a new appraisal until Nov. 18 1913, at which time an action upon the policy was pending," the verdict must be for defendant, was properly refused, where the court properly submitted the issue to the jury whether insured seasonably followed up his rights to have an appraisal after the failure of the first appraisal.

(3)  Fire Insurance.  Protection of Property After Fire.

In an action on a policy of fire insurance, a request to charge in substance that if plaintiff did not protect the property after the fire it was a bar to his right to recover on the policy was properly refused, since such failure to do so would only go to the amount of his recovery.

(4)  Fire Insurance.  Appraisal.

Where the question whether insured had been sufficiently diligent in asking for a second appraisal was an issue in the case, this must be determined by a consideration of all the facts, which include the insurer's attitude and conduct; and there was no error in charging that after a faliure of appraisal, it was as much the duty of the insurer as the duty of insured to seek a new appraisal.

(5)  Fire Insurance.  Evidence.  Limitation Clause.

Evidence that negotiations were had between insurer and insured concerning the loss is admissible upon the question as to whether insurer has waived the time limit for bringing suit and also as it tends to explain the delay in bringing suit, as bearing upon the question of diligence on the part of insured.

(6)  Evidence.  Prejudicial Answer.

Where a question is admissible, a party takes nothing by his objection to the question and his exception to an irrelevant and prejudicial answer, but if it was considered after such answers had been stricken out that the jury would be improperly influenced, a motion to take the case from the jury should have been made, and refusal of such motion could be reviewed on exception.

*(7)   Fire Insurance.   Pleading Inconsistent Facts.*

In an action on a policy of fire insurance, on the issue whether there had been a failure of an appraisal through fault of defendant, plaintiff's declaration alleged that the plaintiff and defendant each selected a competent and disinterested appraiser.   Plaintiff introduced a letter written by him to defendant, which was competent for the purpose of showing a demand for a new appraisal but which assumed that defendant did not appoint a competent and disinterested appraiser.

*Held,* that the plaintiff had removed the issue as to the competency of defendant's appraiser by his allegation as to his competency and refusal to charge as requested by defendant that the jury must assume that defendant's appraiser was competent and disinterested, since plaintiff had admitted these facts, constituted reversible error.

*(8)   Evidence.   Pleading Irrelevant Matter.*

A party may not render incompetent or irrelevant testimony competent merely by pleading it, nor does the failure of the opposing party to move to strike it out as irrelevant or redundant render it admissible.

Stearns, J., dissents.

Assumpsit.   Heard on exceptions of defendant and sustained.

Rathbun, J.   This is an action of assumpsit on two fire insurance policies.   Heard on defendant's exceptions after verdict for the plaintiff in the Superior Court for $634.66.

The policies were of the standard form prescribed by Chap. 222, Gen. Laws, 1909.   On June 21, 1912, a fire caused considerable damage to a portion of the plaintiff's property covered by these policies.   The defendant company was promptly notified and on the following day its agents visited the scene of the fire.   Proofs of loss were duly delivered to the defendant.   The parties being unable to agree as to the amount of the loss entered into a stipulation September 11, 1912, for the appointment of appraisers.   The insurer and the insured each appointed an appraiser but the two appraisers were unable to agree upon an umpire.   On May 11, 1913, after considerable fruitless correspondence between the two appraisers, and also between the parties, the plaintiff commenced suit on the policies.   Said suit failed on demurrer to the declaration for the reason that the declaration did not allege either an award by arbitration or

facts which rendered it unnecessary as a condition. precedent to a right of action to first ascertain the amount of loss by appraisal. See *Messler* v. *Ins. Co.*, 94 Atl. 875. This court sustained the demurrer, July 9, 1915. In November, 1913, plaintiff wrote the defendant requesting a new appraisal "without admitting the necessity for the same." Defendant refused to consider this request. On February 16, 1916, the plaintiff demanded a new appraisal. The demand was refused and the present suit was commenced April 20, 1916.

Defendant's 73rd exception is to the refusal of the court to charge the jury in accordance with its seventh request, as follows: "If, from the evidence, it appears that the present action was commenced more than twelve (12) months after the date of the fire, the jury must return a verdict for the defendant." Defendant's 77th exception is to the granting of plaintiff's second request to charge, as follows: "If the plaintiff acted diligently and in good faith and there was no adjustment of the loss within a year after the fire, the fact that more than a year elapsed before the suit is not a bar." These two exceptions raise the question whether an insured under all circumstances is absolutely precluded from recovering if he fails to bring suit within twelve months after the fire.

By dissecting the policy we readily find the language "no suit or action on this policy, for the recovery of any claim shall be sustainable" . . . "unless commenced within twelve months next after the fire." But if we are to ascertain the intention of the parties as expressed in their contract it is necessary to read this language in connection with other provisions of the policy which provide that "in the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss." The policy also provides that "the loss shall not become payable until sixty

days after the notice, ascertainment, estimate, and satis-
factory proof of the loss herein required have been received
by this company, including an award by appraisers when
appraisal has been required." The policy further provides
that "no suit or action on this policy, for the recovery of
any claim, shall be sustainable in any court of law or equity
until after full compliance by the insured with all the fore-
going requirements" (which includes the provision as to
appraisement and award) "nor unless commenced within
twelve months next after the fire." The policy requires the
insured to file proof of loss within sixty days after the fire.
The insurer, after receiving the proof of loss may take sixty
days to examine the same. The insured after taking a
reasonable time, not exceeding sixty days, to file his proof
of loss may be compelled to await sixty days before he knows
whether or not there is to be a disagreement on the amount
of the loss. If the parties agree as to the amount of loss or
if the insurer fails for sixty days after receiving proof of loss
to notify the insured that the insurer objects to the amount
demanded in the proof of loss the insured may bring suit
immediately after the expiration of sixty days after making
the proof. *De Paola* v. *Ins. Co.* 38 R. I. 126. No appraisal
is necessary or can be had unless there is a disagreement as
to the amount of the loss. If the insurer on the sixtieth day
objects to the loss, as stated in the proof of loss he may still
require the plaintiff to furnish much and varied data and
information and if an appraisal is demanded immediately
and all parties act in good faith and with reasonable expedi-
tion it may not be possible to obtain an award within twelve
months next after the fire. The policy provides that the
loss shall not become payable when an appraisal has been
required until sixty days after the award; of course suit
should not be brought until the loss becomes payable. It
is manifest that it may become impossible for an insured
acting diligently and in good faith to comply with all of the
provisions of the policy with sufficient dispatch to enable
him to bring suit within twelve months next after the fire.

Suppose the award was made eleven months after the fire, what must the insured do? If he brings suit within twelve months after the fire he is met by the objection that the loss was not payable when the suit was commenced. If he waits until sixty days have elapsed after the award he has not commenced his suit within twelve months next after the fire. What was the intention of the parties as expressed in their written agreement? It is certain that the parties did not intend to agree that the insured after suffering a loss covered by the policy should lose his rights under the policy by not commencing suit within twelve months after the fire in the event that it should become impossible for him, without fault on his part, to perform all of the conditions precedent to the right to bring suit within twelve months next after the fire. The parties in their agreement did not specifically provide for the contingency which has arisen. A reasonable construction must be given to the somewhat inconsistent provisions of the policy.

When conflict has arisen between the different provisions of the policy in the limitation clause, the courts have reached different conclusions. Some jurisdictions hold that the twelve months do not begin to run until after "full compliance by the insured with all the foregoing requirements," including an appraisal and award even when the language of the limitation is the same as in the case at bar, viz.: "twelve months next after the fire." *McConnell* v. *Iowa Mut. Aid Assn.,* 79 Iowa 757; *Ins. Co.* v. *Scales,* 101 Tenn. 628; *Steel* v. *Phenix Ins. Co.,* 51 Fed. 715; *Case* v. *Sun Ins. Co.,* 83 Cal. 473; *Sample* v. *London & L. Fire Ins. Co.,* 46 S. C. 491, 47 L. R. A. 696; *Read* v. *State Ins. Co.,* 103 Iowa 307; *Fireman's Fund Ins. Co.* v. *Buckstaff,* 38 Neb. 150; *German Ins. Co.* v. *Davis,* 40 Neb. 700; *Hong Sling* v. *Royal Ins. Co.,* 8 Utah, 135; *Friezen* v. *Allemania Fire Ins. Co.,* 30 Fed. 352; *Egan* v. *Oakland Ins. Co.,* 29 Or. 403; *State Ins. Co.* v. *Meesman,* 2 Wash. 459; *Hogl* v. *Aachen Ins. Co.,* 65 W. Va. 437; *Williams* v. *German Ins. Co.,* 90 App. Div. 413. Other jurisdictions hold that the limitations

because of the inconsistency are ineffectual, that is, they defeat themselves and the ordinary statute of limitations is applicable.  See *Leach* v. *Repub. Ins. Co.* 58 N: H. 245.

In *Dwelling House Ins. Co.* v. *Trust Co.*, 5 Kans. App. 137, the policy on which suit was brought contained a provision that suit should be brought within six months and also a provision that as to mortgagee the primary security must be exhausted before suit.  The court held, as stated in the syllabus of the case, that "where an insurance policy contains the provision 'that when a policy is issued upon the interest of a mortgagee the assured must first exhaust the primary security before he can recover the amount of insurance,' and another clause providing: 'No suit or action against this company upon this policy shall be sustainable in any court of law or equity, unless commenced within six months after the loss or damage shall occur;" such provisions being inconsistent, the ordinary statute of limitations would be applicable to such cases.

Our attention has not been called to any authority which holds that when without fault on the part of the insured there has not been an ascertainment of loss within a year after the fire and an ascertainment is required, suit could not be brought more than twelve months after the fire.

In *McNees* v. *Ins. Co.*, 69 Mo. App. 232, it appeared that a former action had been brought which failed because there had been no appraisal.  The policy contained the same limitation provision as do the policies in the case at bar. The court said (p. 244): "After the cause was determined here as we have stated, plaintiff, near two years after the loss, demanded an arbitration, and defendant refused, principally on the ground that the demand was too late.  The policy does not prescribe a time within which arbitration shall be had, but, in this respect, only provides that the sum due plaintiff shall not be payable until sixty days after it shall have been fixed by the arbitrators and the award received by the defendant."  It is true that when no time is specified for notice of loss and for proofs of loss, a reasonable

time is meant. But what period constitutes a reasonable time depends upon the circumstances of the particular case. In other words, circumstances may prolong or shorten the period which would be denominated a reasonable time.

"In the matter of proofs of loss, but one party, the insured, can act. It is an undertaking to be performed by him alone. In an arbitration under this policy either can set it on foot, and both must take part in it. Though it be true that the insured, in bringing suit, thereby holding the affirmative and the *onus* of showing himself entitled to sue, must act if the other does not, yet the company may very well, if it so desires, take the initiative, on a difference arising, and demand an arbitration. If the company, knowing there is a disagreement as to the amount of the loss and of its right to have an arbitration, omits to call for such arbitration it ought not to be heard to complain of plaintiff's mere delay in making the offer. Of course, since, in the event of the parties disagreeing, plaintiff's cause of action depends on an arbitration for support, he takes upon himself the chance or peril which may happen from the delay. If a demand for appraisal should be made by the insured so late that the defendant should refuse it, then if he could show by answer and proof that it refused for the reason that plaintiff had so delayed that it was impossible, or impractical to arbitrate, it would deprive plaintiff of the benefit of the arbitration."

"These views prevent the possibility of any injustice to the parties and are in harmony with that rule of law which disfavors forfeitures except when clearly demanded by the stipulation of the parties. We shall, therefore, hold the plaintiff's offer of arbitration not too late."

See also *Gragg & Gragg* v. *Ins. Co.*, 132 Mo. App. 405. No error was committed in denying the defendant's seventh request to charge and granting plaintiff's second request. Defendant's 73rd and 77th exceptions are overruled.

Defendant's 71st exception is to the refusal of the court to grant defendant's fifth request to charge, as follows:

"If the evidence shows that, on or before January 9, 1913, the appraisal failed through no fault of the defendant, and if the evidence shows that no request was made by Mr. Messler to the defendant company for a new appraisal until November 18, 1913, at which time an action at law upon the policy was pending, the jury must return a verdict for the defendant in the present action."  The request was properly refused.  The court properly submitted this issue to the jury by the following charge, to which defendant's 81st exception applies:  "Now as to the question of liability, Gentlemen, it is for you to say whether this plaintiff after the failure of the appraisers to do the first act that they were called on to do, did seasonably follow up his rights according to the terms of the policy, I mean, to have an appraisal; or did the delay that occurred and his conduct in first bringing the suit, bringing the first suit instead of pursuing his terms under the policy, amount to such a neglect of the course called for by the policy as to give you a right to condemn him for not having seasonably followed up his rights. If you find that he did seasonably follow up his rights, he is entitled to a verdict for the loss.  If he did not, the defendant is entitled to your verdict."  See *Uhrig* v. *Ins. Co.*, 31 Hun. 98, 101 N. Y. 362.

Defendant's 71st and 81st exceptions are overruled.

Defendant's 75th exception is to the refusal of the court to charge as follows:  "It was the duty of the insured, Arnold C. Messler, in the event of the occurrence of fire, to protect the property from further damage and to put the property in the best possible order and if it be found that the plaintiff did not do these things, the jury must return a verdict for the defendant."  The request was properly refused. As the court said in *German-American Ins. Co.* v. *Brown*, 75 Ark. at 259:  "The effect of such neglect on the part of the insured would only have been to prevent a recovery of so much of the property as could have been saved by the use of reasonable means at their command.  The language of the policies on that subject is as follows:  "This company

shall not be liable for loss caused . . . by neglect of the insured to use all reasonable means to save and preserve the property at and after the fire.' This language cannot be interpreted to mean that a negligent failure to use such means to save the property works a forfeiture of the entire policy. The instruction asked by appellants conveying that interpretation of the contract was therefore erroneous, and was properly refused."

In *Gage* v. *Connecticut Fire Ins. Co.*, 34 Okl. 744, 127 Pac. 407, the court held that it was error for the trial court to direct a verdict for the defendant because of the insured's failure to protect the property and used the following language: "The defendant next urges in support of the court's ruling that the plaintiff violated the provision of the policy requiring him to protect the property from damages after loss; but it is manifest that failure to do so would not destroy his right of action entirely, but would only go to the amount of his recovery."

See also *Wolters* v. *The Western Assurance Co.*, 95 Wis. 265; *Beavers* v. *Security Mutual Ins. Co.*, 76 Ark. 595; *Knox-Burchard Mercantile Co.* v. *Hartford Fire Ins. Co.*, 129 Minn. 292, 152 N. W. 650; *Sisk* v. *Citizens' Ins. Co.*, 45 N. E. 804. The latter case, cited by the defendant, does not support defendant's contention that a failure to protect the property after the fire is a bar to plaintiff's right to recover on the policy.

Defendant's 75th exception is overruled.

Defendant's 82nd exception was taken as follows: "Also to those portions of the charge which instruct the jury that after a failure of appraisal it is as much the duty of the insurer as the duty of the insured to seek a new appraisal." In the charge complained of the court was not considering the question of an appraisal as a condition precedent to the right to bring suit. That question had been properly and adequately considered in the charge. The court was considering the question of delay on the part of the plaintiff before asking for a second appraisal. Whether the plaintiff

had been sufficiently diligent in asking for a second appraisal was an issue in the case. The question whether a person has acted with reasonable diligence must be determined by a consideration of all the facts and circumstances connected with the particular case, and one of those facts in this case was the defendant's attitude and conduct. Both parties to the suit were parties to the contract of insurance. Speaking from the standpoint of duty it is as much the duty of the defendant to attempt promptly to adjust the dispute on the question of the amount of loss as it is the duty of the plaintiff. In *Johnson* v. *Ins. Co.*, 69 Mo. App. 231, the court said: "Neither was compelled to await the action of the other; the calling for an arbitration was as much the privilege or duty of the one as the other." See *Am. Ins. Co.* v. *Rodenhouse*, 36 Okl. 211. If an insured does not follow up his rights and seasonably demand an appraisal but awaits until after the goods are sold or destroyed or until for some other reason an appraisal is impossible it has been held that the demand was made too late and that there could be no recovery on the policy. *Morley* v. *Ins. Co.*, 85 Mich. 210. But these cases are not in point.

Defendant's 70th, 78th, 82nd and 84th exceptions are overruled.

Exceptions 29, 30, 32, 33, 35 and 36 apply to the following questions by Mr. Waterman and answers by witness Matie C. Messler. "13 Q. Up to what time did negotiations between the insurance companies and you in regard to this loss continue? Mr. Moulton: I object to that. (Defendant's exception noted.) A. Do you mean the date? 14. Q. Yes. A. Why, we were conferring back and forth with them for some time. 15 Q. Up to what time? What was the final negotiations that you had with the insurance companies as to this loss? Mr. Moulton: We object. (Defendant's exception noted.) (Ex. 29.) A. We went over to the Insurance Commissioner, and he said we had done everything that we could reasonably be expected to do.

The Court: Don't tell what he said. 20 Q. Has any representative of any insurance company been to see you since that time? Mr. Moulton: I object. (Defendant's exception noted.) (Ex. 30) A. That man that came to offer to settle with us for eight thousand dollars. 21 Q. When was that? Mr. Moulton: I object. The Court: The offer to settle may be struck out. You were asked for the date. A. I don't know what date that man came in. 22 Q. How long ago was it? Mr. Moulton: I object. (Defendant's exception noted.) (Ex. 32) A. It was after we put the matter in your hands, he came in and said— 23 Q. You can't tell what he said. A. Not what he said to me? 24 Q. No. What I want to get at is the date that he came; about how long ago? Mr. Moulton: I object. (Defendant's exception noted.) (Ex. 33) A. I think it was three or four years ago. The Court: Now you ought to identify that person as well as you can. 25 Q. Who was that person who came to see you? A. I do not recall the name, but I think I gave his card to you later. 26 Q. Well, do you remember which company he purported to represent? A. He purported to represent all the companies, and he said that this matter—Mr. Moulton: I object. The Court: You can't tell the conversations. Mr. Moulton: I also ask to have that struck out. If your Honor please, may this witness be instructed to wait just a minute and give me a chance to object? The Witness: But Mr. Eddy told me that, and this man told me. Mr. Moulton: I think we are entitled to the ordinary courtesies in this case, and I ask that the witness be instructed not to answer until I get a chance to object. The Witness: How long will I wait? Mr. Moulton: There is a lot of hearsay evidence here. The Court: Go on, Mr. Waterman. 27 Q. Now, did you have any conference with Mr. Eddy about the matter at that time? A. Yes, I did have. Mr. Moulton: I object. The Court: You may answer. Exception. (Defendant's exception noted.) (Ex. 35) A. (Continued) A conference. That is, Mr. Eddy came in

and talked with me frequently, and he felt very badly— The Court: Well, you have answered. A. (Continued) About the way the insurance people were treating the matter. 28 Q. Now I am referring to the time this man came over to see you; did you have any talk with Mr. Eddy at that time? Mr. Moulton: I object. (Defendant's exception noted.) (Ex. 36) Q. (Continued) In regard to that person coming over to see you? A. Yes. Mr. Eddy said that—The Court: You saw Mr. Eddy about it. Now, that is all you were asked. The Witness: Yes, I saw Mr. Eddy. Excuse me. Mr. Waterman: I want to connect up through Mr. Eddy as far as I could who that man was. The Court: Well, that is all right, but apparently she was going on to tell what Eddy and she said. A. (Continued) He represented the insurance companies, and offered to settle with us for eight thousand dollars, and I told him we couldn't settle for less than eleven thousand two hundred and the interest, plus the interest; and I also told him—Your Honor, may I tell what I told him? The Court: You have gone way beyond the question that was asked you. Mr. Waterman told you he wanted you as far as you could to identify that person who called. Mr. Moulton: I want to have my objection noted to the compromise conversation that has gone in. The Court: It should not have been stated, as has been remarked before. It isn't evidence."

Each of the questions objected to was clearly admissible. No one of these questions calls for an answer tending to prove an offer to compromise. Plaintiff's counsel was seeking to prove only that negotiations were conducted between the parties for a considerable time. Evidence that negotiations were had between the insurance company and the insured concerning the loss is admissible upon the question as to whether the insurance company has waived the time limit for bringing suit and also, as it tends to explain the delay in bringing suit, as bearing upon the question of diligence on the part of the plaintiff. See *Bates* v. *German*

*Commercial Accident Co.*, 88 Atl. (Vt.) 532; *Lynchburg Cotton Mill Co.* v. *Travelers' Insurance Co.*, 149 Fed. 954. The answers to the questions so far as they recite the details of an offer by the insurance company to compromise were clearly inadmissible and prejudicial. The court on its own motion ordered some of these answers stricken out. Apparently the court did not refuse to strike out any of the prejudicial answers. At least no exception is taken to such a refusal. It is evident from the record that the court tried as much as did defendant's counsel to prevent the witness from giving irrelevant and prejudicial answers.

The question being admissible the defendant takes nothing by his objection to a question which is unobjectionable and his exception to an irrelevant and prejudicial answer. The defendant received no adverse ruling from the court concerning the irrelevant and prejudicial answers. Defendant does not complain that the court refused to strike out the improper answers or refused to properly instruct the jury concerning such answers. If the defendant considered, after the prejudicial answers had been given and stricken out, that the jury would be improperly influenced and the defendant prejudiced by reason of the improper answers, the defendant should have moved to take the case from the jury. Had such a motion been refused and the defendant's exception was before us the defendant's contention as to prejudicial error would appeal very strongly to this court. See *Demara* v. *Rhode Island Co.*, 42 R. I. 215. As this court said in *Salter* v. *Rhode Island Co.*, 27 R. I. 27, "To measure the effect of such misconduct upon the verdict in a case where the evidence for the plaintiff was not conclusive is beyond the power of the court."

The defendant relies upon *Salter* v. *Rhode Island Co.*, *supra*, as an authority in this case. The questions which were objected to and which were answered by testimony showing offers of compromise in *Salter* v. *Rhode Island Co.*, were inadmissible. It was immaterial whether any repre-

sentative of the railroad company had called to see the plaintiff.

Defendant's exceptions 29, 30, 32, 33, 35 and 36 are overruled.

The defendant's 74th exception is to the refusal of the court to grant defendant's request to charge the jury as follows: "The jury must assume that Percy A. Harden, the appraiser appointed by the defendant company, was a competent, disinterested and duly qualified appraiser, since the plaintiff admits these facts in its declaration." In the first count of the plaintiff's declaration we find the following language: "and the plaintiff avers that after said loss and damage as aforesaid, the said plaintiff and the said defendant were unable to agree upon the amount of loss or damage as aforesaid, and thereupon, in pursuance of the terms of said policy, said plaintiff and said defendant entered into an agreement of appraisal, and said plaintiff selected a competent and disinterested appraiser, and said defendant selected a competent and disinterested appraiser, and the said appraisers under said agreement of appraisal and said policy of insurance were to select a competent and disinterested umpire and to appraise said damage and loss, and in said agreement of appraisal it was agreed by the plaintiff and defendant that said appraisers should act in the premises, but the two appraisers so selected have as yet failed to agree upon a competent and disinterested umpire, without fault on the part of the said plaintiff." The declaration proceeds to set out the travel of the first suit betwen the parties and alleges that said suit failed on demurrer to the declaration. The declaration in this suit alleges in substance that the plaintiff twice demanded a new appraisal, once while the first suit was pending and again after the termination of the first suit. But instead of formally alleging a demand by plaintiff for a new appraisal and a refusal by the defendant, the declaration sets out in full the correspondence between the parties on the subject of a new appraisal. One of the plaintiff's letters set out in the declaration is as follows:

"PROVIDENCE, R. I.
November 18, 1913.

*The Williamsburg City Fire Insurance Company,*
*Brooklyn, New York.*

Inasmuch as you have not selected a competent and disinterested appraiser to act with a competent and disinterested appraiser selected by me, to determine the amount of loss under policy No. 3, 297,701 and 3, 297,898 in your company, there having been a disagreement as to the amount of loss under said policy, said loss resulting because of the damage and destruction of my property by a fire on or about the 21st day of June, 1912, and inasmuch as the appraiser selected by you and the appraiser selected by me have been unable to agree upon a competent and disinterested umpire, said inability to agree not being due to my fault or any fault on the part of the appraiser selected by me, but being due solely to the fault of your company and its representative and the appraiser selected by your company, and inasmuch as the appraiser selected by your company has refused to act any further in the premises and to attempt further to agree upon a competent and disinterested umpire, or to do any other act under the terms of said policy, and the appraisal provided for therein, I hereby request and demand that you select under the said policy a competent and disinterested appraiser to act with a competent and disinterested appraiser to be selected by me, and I do hereby offer to select such an appraiser, in the selection of a competent and disinterested umpire and the appraisal of my loss under said policy.

This request and demand I make without admitting the necessity of the same and without waiving any of my rights in the premises.

(Signed)    ARNOLD C. MESSLER."

The only legitimate purpose of setting out this letter in the declaration was to allege that the plaintiff had demanded a new appraisal. Much of the letter on motion

might have been stricken from the record as irrelevant and inconsistent. *Reed* v. *Poindexter*, 16 Mont. 294; *State* v. *Dickerman*, 16 Mont. 278; 31 Cyc. 640. Said letter was properly received in evidence to prove a demand for a new appraisal. It will be noted that this letter reflects severely upon defendant's appraiser, Percy A. Harden. Plaintiff in his declaration did not see fit to allege that the defendant had knowingly selected an incompetent and interested appraiser. He doubtless would have so alleged if he believed he could sustain such an allegation by proof as there could be no doubt as to his right to bring suit before an award was obtained if the defendant had knowingly selected an incompetent and interested appraiser. The plaintiff preferred to allege and did allege that the plaintiff and defendant each selected a competent and disinterested appraiser and the plaintiff appears to take the position that the appraisal has never failed. The prejudicial portions of said letter set out in the declaration are not allegations of facts tendering an issue but are a recital of evidence of facts inconsistent with the facts alleged in the same count. After alleging that the defendant had appointed a competent and disinterested appraiser the plaintiff should not have been permitted to insinuate or prove that the defendant's appraiser Harden was incompetent or interested. See *Hall* v. *Polack*, 42 Cal. 218. Said letter contains the following language: "and inasmuch as the appraiser selected by you and the appraiser selected by me have been unable to agree upon a competent and disinterested umpire, said inability to agree not being due to my fault or any fault on the part of the appraiser selected by me, but being due solely to the fault of your company and its representative and the appraiser selected by your company, and inasmuch as the appraiser selected by your company has refused to act any further in the premises and to attempt further to agree upon a competent and disinterested umpire, or to do any other act under the terms of said policy and the appraisal provided for therein," &c. The reasonable inference to be

drawn from this language is that the defendant had selected an incompetent and interested appraiser; that the defendant had improperly influenced the action of such appraiser and that the appraisal failed through fault of the defendant. But in the same count the plaintiff alleges that "the said appraisers duly qualified to perform their duties and did not at any time resign or surrender their positions as such appraisers and are still duly qualified appraisers of the loss and damage sustained by the plaintiff, and the said agreement of appraisal is in all its parts in full force and effect and has never been suspended, rescinded, cancelled, or annulled"; that the plaintiff has acted in good faith and with due diligence to obtain an award and that no appraisal has been had. A portion of one of defendant's pleas to this count is as follows: "to wit, upon the 9th day of January A. D. 1913, the appraiser named by the plaintiff and the appraiser named by the defendant failed to agree upon an umpire without fault on the part of the defendant, of which the plaintiff had knowledge. Yet the plaintiff did not diligently and seasonably demand a new appraisal or name a new appraiser or in any way seek a new appraisal, but then and there abandoned said arbitration and appraisal and made no further attempt or effort to have the amount of the loss alleged to have been sustained by him determined in the manner provided by the policy of insurance in said first count mentioned but brought an action on said policy," &c. The plaintiff traversed a portion of the above plea as follows: that the appraisers "did not fail to agree upon an umpire, nor did they fail to agree upon an umpire without fault on the part of the defendant, on the 9th day of January, A. D. 1913, or at any other time, nor did the said plaintiff then and there, or at any time or place abandon said arbitration and appraisal," &c.

From these pleadings it became an issue as to whether there was a failure of an appraisal through fault of the defendant.

The plaintiff's said letter should have been limited to the purposes for which it was properly admitted.   In *Ireton v. Ireton*, 59 Kans. at p. 95, the court said, "A party may not render incompetent or irrelevant testimony competent merely by pleading it, nor does the failure of the opposing party to move to strike it out as irrelevant or redundant render it admissible."

(8)   ·After alleging that the defendant selected a competent and disinterested appraiser the plaintiff should not have been permitted to prove that his allegation was untrue for the purpose of meeting one of defendant's pleas to the same count.   See *Hall* v. *Polack*, 42 Cal. 218.   Had the defendant directed the Court's attention to this inconsistency and requested a charge to the effect that the letter was admitted in evidence for the purpose of proving a demand for an appraisal and that it could not be treated as evidence of interestedness or incompetency on the part of Harden the Court doubtless would have granted such a request and also the request which was refused.   It would have been better to have so framed the request that the mind of the Court would have been drawn to the letter in question as it would have been clearly apparent that the plaintiff should not be permitted to disprove or deny his solemn allegations. The plaintiff does not contend that he should have been permitted so to do.   He states in his brief, "The question of Harden's competency was not submitted to the jury.   It was not in issue.   There was no testimony that showed that Harden was incompetent."   We think the letter in question introduced by the plaintiff for another and proper purpose did seriously attack the competency and disinterestedness of Harden.

One of the issues in the case was whether the appraisal failed through fault of the defendant.   The appraisal could have failed throughf ault of the defendant if it knowingly selected an incompetent and interested appraiser.   Said letter which was introduced in evidence by the plaintiff assumes that defendant did not appoint a competent and

disinterested appraiser (in other words, did appoint an incompetent and interested appraiser) and assumes that the failure to select an umpire (in other words, the failure of the appraisal) was "due solely to the fault of your company and its representative and the appraiser selected by your company," &c.  In connection with said issue there would have been the issue whether Harden was a competent and disinterested appraiser had not the plaintiff barred this issue by alleging that "said defendant selected a competent and disinterested appraiser."  While, as the plaintiff argues, Harden's competency was not in issue yet the jury was not instructed that it was not in issue and the jury was not instructed that the letter in question could not be considered as evidence of incompetency or interestedness on the part of Harden.  What reason can be advanced for assuming that the jury, with the prejudicial letter before them, did not conclude that Harden's competency and interestedness was an issue in the case?

It is well established that a party is not bound by every statement and allegation in his pleadings but inasmuch as the plaintiff had the opportunity of tendering an issue by pleading that:  the defendant did not select a competent and disinterested appraiser but on the contrary, well knowing that the appraiser selected by it was incompetent and interested (the plaintiff being ignorant of the facts), did select an incompetent and interested appraiser and that the appraisal failed through fault of the defendant in so selecting an incompetent and interested appraiser, and inasmuch as the allegation that the defendant selected a competent and disinterested appraiser must have been made advisedly as the letter in question, containing language inconsistent with said allegation, was recited in the same count, we think the plaintiff must be deemed to have admitted that Harden was a competent and disinterested appraiser.  Some liberality is allowed in pleadings particularly as regards inconsistent pleas, but a plaintiff is not permitted by blowing both hot and cold at the same time to maintain an action.

The defendant was entitled to have said request granted. It is apparent that the irrelevant portions, not only of said letter but of other letters which were before the jury, were highly prejudicial to the defendant.    Such testimony is likely not only to have weight but to be regarded by the jury as decisive of the plaintiff's right to maintain his action. Defendant's 74th exception is sustained.

As a new trial must be granted the court does not deem it necessary or proper to consider at this time whether the verdict is against the evidence or whether the damages are excessive.

All of defendant's other exceptions are overruled and the case is remitted to the Superior Court for a new trial.

STEARNS J. dissents.

*Waterman & Greenlaw, Lewis A. Waterman, Ralph M. Greenlaw, Charles E Tilley,* for plaintiff.

*Huddy, Emerson & Moulton, E. Butler Moulton, Brown & Caine, Frederick W. Brown,* for defendant.