Eugene L. GAGNER

v.

Demetra STREKOURAS et al.

No. 78–308–Appeal.

Supreme Court of Rhode Island.

Dec. 19, 1980.

---

Everett A. Petronio, Cranston, for plaintiff.

Gunning, LaFazia & Gnys, Inc., Richard T. Linn, Providence, for defendants.

## OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiff seeks recovery for personal injuries and property damage arising out of an automobile collision in which one of the defendants was driving the other's (her husband's) automobile. The plaintiff is before us on his appeal from the grant of a motion for partial summary judgment pursuant to Rule 56 of the Superior Court Rules of Civil Procedure with respect to the personal-injury claim. The motion was granted on the basis that the plaintiff's personal-injury claim was barred by the three-year statute of limitations found in G.L.1956 (1969 Reenactment) § 9–1–14. Hereafter we shall refer to the plaintiff by his last name and to the defendants by their first names.

The pleadings and the affidavits filed by the litigants reveal the following. On October 18, 1974, Gagner was involved in an automobile collision with a vehicle owned by Nicholas and driven by Demetra. Gagner's attorney did not become involved in this controversy until April 1976. He then contacted Nicholas's insurer by a letter dated June 23, 1976. The attorney then commenced negotiations with the insurer's adjuster by mail and telephone. According to the attorney, the adjuster sent him a letter on February 14, 1977, in which he "represented that a settlement could be easily reached" and went on to observe, "[I]t is

just a matter of coming to an agreeable figure." Negotiations continued between the adjuster and the attorney, who claimed that he relied on the conversations that took place on these occasions. On October 18, 1977, Gagner's personal-injury claim was barred by the three-year proviso of § 9–1–14. Negotiations, however, continued on between the attorney and the insurer past the new year, including a January 26, 1978 offer by the adjuster.

This litigation was commenced on February 2, 1978. Gagner acknowledges the lapse of the three-year period but contends, as he did before the trial justice, that Nicholas and his insurer should be estopped from invoking the terms of § 9–1–14. Nicholas and Demetra contend that there is nothing in the record to support an inference that the attorney's expectation of a settlement without suit was reasonable, particularly in light of the disparity in the figures discussed by the attorney and the adjuster. The attorney's initial demand was $20,000. The adjuster allegedly rejected this figure and informed the attorney that his settlement authority ceased once the demand exceeded $2,500. In addition, the adjuster claims that in response to this information, Gagner's attorney stated, "[T]here is no way I can take $2500 in settlement. I guess I'll have to issue writs." Since we are concerned with the grant of a summary judgment, the correctness of the grant depends upon whether the record discloses the existence of a disputed material fact.

Gagner, of course, cannot rely on the mere negotiations between his attorney and the adjuster to justify the application of estoppel. If this were so, such a procedure would frustrate and impede settlement negotiations. *Greater Providence Trust Co. v. Nationwide Mutual Fire Insurance Co.*, 116 R.I. 268, 272, 355 A.2d 718, 720 (1976). However, settlement negotiations can bring on an estoppel if they are accompanied by certain statements or conduct calculated to lull the claimant into a reasonable belief that his claim will be settled without a suit. *Id.*

In *Greater Providence Trust Co.*, we stated that an estoppel can be found when at least one of the following situations is present: (1) the insurer, by his actions or communications, has assured the claimant that a settlement would be reached, thereby inducing a late filing, or (2) the insurer has intentionally continued and prolonged the negotiations in order to cause the claimant to let the limitation pass without commencing suit. *Id.* at 273, 355 A.2d at 720.

▮ Whether negotiations for the compromise of a claim will give rise to an estoppel against the imposition of the statute of limitations depends upon the character of the negotiations and the circumstances surrounding the parties. Consequently, this issue is most often a question for the trier of fact. *Flagler v. Wessman*, 130 Ill. App.2d 491, 494, 263 N.E.2d 630, 632 (1970); *Knight v. Lawrence*, 331 Mass. 293, 118 N.E.2d 747 (1954); *Triple Cities Construction Co. v. Maryland Casualty Co.*, 4 N.Y.2d 443, 448, 176 N.Y.S.2d 292, 295–96, 151 N.E. 2d 856, 858–59 (1958); *Hart v. Bridges*, Okl., 591 P.2d 1172, 1174 (1979); *Lyden v. Goldberg*, 260 Or. 301, 307, 490 P.2d 181, 183 (1971); *see generally*, Annots., 44 A.L.R.3d 482 (1972), 43 A.L.R.3d 756 (1972), 39 A.L. R.3d 127 (1971).

▮ We note that courts, in considering this issue, examine the facts to determine whether there is any evidence to support a reasonable belief sufficient to work an estoppel. Chief among these is a concession of liability. *Hurtt v. Davidson*, 84 Ill. App.3d 681, 683, 40 Ill.Dec. 389, 391, 406 N.E.2d 90, 92 (1980). The adjuster did exactly that when he wrote to the attorney and described the dispute about the dollar value of the personal-injury claim as "just a matter of coming to an agreeable figure." Although this statement may not have been a definite assurance of settlement, it was, at the least, ambivalent. Courts have frequently rejected attempts for a summary judgment when, as here, the insurer concedes liability, leaving only the question of damages unresolved. *Kinsey v. Thompson*,

44 Ill.App.2d 304, 194 N.E.2d 565 (1963); *Friedman v. Friendly Ice Cream Co.*, 133 N.J.Super. 333, 336 A.2d 493 (1975); *Rice v. Granite School District*, 23 Utah 2d 22, 456 P.2d 159 (1969). In *Kinsey*, the court stated,

"The circumstance, in the case before us, as specified by affidavit, that liability was in fact conceded and that the only question remaining was the amount of the settlement, and that negotiations to this end proceeded both before and after the period of the statute of limitations had run, in our judgment raised the question of fact so that the pleadings filed raising the issue of waiver or estoppel as to the statute of limitations should be inquired into factually before a jury * *." *Kinsey v. Thompson*, 44 Ill.App.2d at 307, 194 N.E.2d at 567.

It is also significant that in the case at bar, just as in *Kinsey*, negotiations continued after the period of limitations had run. This observation throws some light on the earlier conduct of the adjuster. *See Shea v. Gamco, Inc.*, 81 R.I. 12, 98 A.2d 864 (1953). We hasten to point out that the record here is distinguishable from the record in *Cardente v. Travelers Insurance Co.*, 112 R.I. 713, 315 A.2d 63 (1974). There, no facts were presented concerning any conduct by the insurer prior to the date when the statute of limitations expired. In *Cardente*, the only conduct giving rise to an alleged estoppel occurred after the statute of limitations had expired.

In ruling on a motion for summary judgment, a court may not consider questions of credibility or weight of the evidence but must consider the affidavits and pleadings in the light most favorable to the party opposing the motion. *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, R.I., 410 A.2d 986 (1980). The motion should be granted only if the record unquestionably discloses that there is no genuine issue of any material fact. With these principles in mind,[1] it is our belief that there are factual

---

1. Nicholas's and Demetra's motion for a summary judgment contained no supporting affida-

vit. Thereafter, in opposing the motion, Gagner filed his attorney's affidavit. Subsequently,

differences in the record which should be resolved by a trier of fact rather than by a motion for summary judgment.

The plaintiff's appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for further proceedings.

---

the insurer filed counteraffidavits in opposition to Gagner's affidavit. Thus, two questions of fact were presented: (1) whether Gagner's attorney did in fact rely upon the adjuster's assurance of settlement in light of statements allegedly made by Gagner's attorney such as the one to the adjuster in which the attorney allegedly said, "I guess I'll have to issue writs," and (2) assuming the factfinders believe the attorney, was he justified in his alleged belief that the running of the statute of limitations

would be no bar to a settlement of the personal-injury claim.