DECISION
The sole issue raised by the cross motions for summary judgment before the Court is whether or not an appraisal provision in an insurance contract is time-barred by a limitations provision within the same contract. For the following reasons, the Court finds that it is so barred as there is no ambiguity in the contract language — specifically, that the limitation provision applies to suits brought pursuant to the appraisal provision, and it expired years before the instant suit was brought. Furthermore, the Court finds there is no factual reason to toll the limitations period. The Court therefore holds that this dispute is time-barred by the plain, unambiguous terms of the contract.
 I Facts and Travel
On August 29, 1996, Travelers Indemnity Co. ("Defendant") issued National Refrigeration, Inc. and Jack King (collectively "Plaintiff") an insurance policy covering the Plaintiff's business property, as well as certain lost income and expenses in case of damage to that property. On June 22, 1997 an electrical storm damaged the Plaintiff's *Page 2 
property, including a "Cybermation machine"[1] used in connection with the Plaintiff's business.
As a result of the damage, Plaintiff filed a claim on the Defendant for approximately $103,000, asserting that the damaged Cybermation machine needed to be replaced. The Defendant, contending that the machine could be repaired instead of replaced, made two separate insurance payments to the Plaintiff (on July 9, 1997 and February 20, 1998), totaling approximately $30,000 (or about $73,000 less than the Plaintiff's original claim). In early 1998, Defendant made it clear to the Plaintiff that no further payment regarding the Cybermation machine would be considered without additional documentation.
Defendant received no additional documentation or information from the Plaintiff until April 2002, four years after the final payment had been made, and nearly five years after the damage had occurred. Nevertheless, at the Plaintiff's written behest, the Defendant opened a second investigation regarding the disputed loss amount in October 2002. Based on this second investigation, the Defendant again concluded that no additional payment would be made.
On July 16, 2003, Plaintiff demanded an appraisal as set out by the terms of the insurance policy. Specifically, Plaintiff sought to apply Business Owner's Property Coverage Special Form, p. 13, para.E(2) (the "Appraisal Provision"), which states that:
 "if [the parties] disagree on the value of the property . . . either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge. . . . The appraisers will state separately the value of the *Page 3 
property . . . or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding."
However, citing Business Owner's Property Coverage Special Form, p. 17, para.F(4) (the "Limitations Provision"), and noting the fact that the Plaintiff had waited six years since the loss occurred before making this request, the Defendant refused to apply the Appraisal Provision. The Limitations Provision states that:
 "[n]o one may bring legal action against [Defendant] under [the policy] unless . . . (b) [t]he action is brought within 2 years after the date upon which the loss or damage occurred."
Although Defendant claimed the Plaintiff's demand for appraisal was time-barred by the terms of the policy, the Defendant voluntarily reopened the investigation on August 18, 2003, to "further investigate the matter" of Plaintiff's damages, explicitly reserving as it did so all defenses and rights under the insurance policy.[2] On August 29, 2003, for the third time,[3] the Defendant reiterated its earlier position: that no further payment would be made based on the Plaintiff's 1997 loss.
In early 2004, the Plaintiff again requested that the Defendant participate in the process laid out by the Appraisal Provision,[4]
which the Defendant again refused.[5] In *Page 4 
response, on February 9, 2005, Plaintiff filed the instant Petition for Arbitration seeking to enforce the Appraisal Provision. Defendant objects to the Plaintiff's petition, and has moved for summary judgment claiming that the plain language of the Limitations Provision time-bars Plaintiff's claim. Plaintiff has filed a cross-motion for summary judgment.
 II Standard Of Review
Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law." Super. Ct. R. Civ. P. 56(c). The Court "does not pass upon the weight or the credibility of the evidence," but instead must consider the evidence "in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville Racing Ass'n, 603 A.2d 317, 320
(R.I. 1992). "If there are no material facts in dispute, the case is ripe for summary judgment." Richard v. Blue Cross Blue Shield,604 A.2d 1260, 1261 (R.I. 1992). However, the Court's role at this stage is only to identify pertinent factual disputes, and not to resolve those disputes. Rotelli v. Catanzaro, 686 A.2d 91 (R.I. 1996). For that reason, summary judgment is a remedy that should be cautiously applied.Id.
 III Discussion
At the outset, the Court notes that the parties' only material dispute is the amount of loss suffered by the Plaintiff. To resolve this dispute, Plaintiff has brought a lawsuit to *Page 5 
enforce the Appraisal Provision, claiming it is an arbitration clause regulated by G.L. 1956 § 10-3-4.[6] That statute states, in pertinent part, that a "party aggrieved by the alleged failure, neglect, or refusal of another to perform under a written agreement for arbitration may petition the superior court . . . for an order directing that the arbitration proceed in the manner provided for in the agreement." In response, Defendant has raised the affirmative defense that the Plaintiff's suit is time-barred by the plain language of the contract.[7]
Limitation periods "are intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial." United States v. Levine,658 F.2d 113, 127 (3d Cir. 1981). A limitation period — created either by statute or contract — does not shield a defendant from suit, rather it merely places permissible time limits on a plaintiff bringing suit.Id. at 120. "A . . . limitations period in an insurance policy is a term to which the parties are specifically bound." Di Iorio v. Abington Mut.Fire Ins. Co., 121 R.I. 689, 694 (R.I. 1979) (citing Greater ProvidenceTrust Co. v. Nationwide Mutual Fire Insurance Co., 116 R.I. 268, *Page 6 335 A.2d 718 (1976)). Thus, the Court must first construe the insurance policy to determine whether or not the parties are bound by the Limitations Provision.
Insurance policies are "a matter of contract," and are therefore governed by the same rules of construction. Children's Friend Serv. v.St. Paul Fire Marine Ins. Co., 893 A.2d 222, 229-230 (R.I. 2006) (citing Gregelevich v. Progressive Northwestern Insurance Co.,882 A.2d 594, 595 (R.I. 2005) (mem.) (internal citations omitted)). Generally speaking, "[t]he rights and liabilities of the parties to an insurance contract are to be ascertained in accordance with the terms as set forth therein." Di Iorio, 121 R.I. at 694 (citing Donahue v. Hartford FireInsurance Co., 110, R.I. 603, 295 A.2d 693 (1972)). Thus, a party is "not under a duty to arbitrate [an insurance claim] unless with clear language he has agreed to do so." Bush v. Nationwide Mutual InsuranceCo., 448 A.2d 782, 784 (R.I. 1982). Here, the parties' dispute relates to the amount of loss suffered by the Plaintiff, and the Appraisal Provision clearly manifests the parties' agreement to arbitrate these types of disputes. However, the language of the Limitations Provision appears to bar untimely suits, such as the instant case. The Plaintiff argues that the Limitations Provision is ambiguous and, therefore, should not apply.
If an ambiguity exists in an arbitration clause, there is a presumption in favor of "resolving any doubt in favor of arbitration."Sch. Comm. of N. Kingstown v. Crouch, 808 A.2d 1074, 1078 (R.I. 2002) (quoting Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983) (internal citations omitted)). Similarly, where the relevant terms of an insurance contract are ambiguous, "the policy will be construed in favor of the insured to avoid forfeiture." Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185,1192-1193 (R.I. 2002) (citing Campbell v. Norfolk Dedham Mutual FireInsurance Co., 682 A.2d 933, 935 (R.I. *Page 7 
1996) (internal citations omitted)); see also Inventasch v. SuperiorFire Ins. Co., 48 R.I. 321 (R.I. 1927) (citing Imperial Fire Ins. Co. v.Coos Co., 151 U.S. 452 (1894); Messler v. Ins. Co., 42 R.I. 460,108 A. 832 (1920)) (noting that there is an historic tendency under Rhode Island law "to indulge presumptions against the insurer, and to favor [the] insured in case of ambiguous terms of the policy"). Additionally, it is well-settled law that "[w]hen ambiguity is present, . . . [contract] language will be strictly construed with all ambiguities decided against the drafter." Monahan v. Girouard, 911 A.2d 666, 672
(R.I. 2006) (citing Employeer Mut. Cas. Co. v. Pires, 723 A.2d 295, 298
(R.I. 1999)). Here, the insurance policy was drafted by the Defendant, and the insured Plaintiff is seeking an order enforcing an arbitration clause. Therefore, the Court must resolve any ambiguity in the disputed insurance policy in favor of the Plaintiff.
Nevertheless, "where the terms of the contract are clearly expressed, in a standard policy, [there is] no warrant for the court to disregard the plain meaning of the language in the contract."Inventasch, 48 R.I. at 321 (citing Atlas Reduction Co. v. New ZealandIns. Co., 138 F. 497 (1905)). It is well-established law, that "[i]f the terms of a contact are found to be unambiguous . . . the task of judicial construction is at an end and the parties are bound by the plain and ordinary meaning of the terms. . . ." Zarrella v. MinnesotaMutual Life Insurance Co., 824 A.2d 1249, 1259 (R.I. 2003). Unambiguous terms control even in the case of unilateral and potentially unfair terms. See Di Iorio, 402 A.2d 745, 747 (R.I. 1979) ("the rights and liabilities of the parties to an insurance contract are to be ascertained in accordance with the terms set forth therein"). This includes unambiguous, contractually-created limitations periods in insurance contracts which Rhode Island law has long considered valid and binding. Hay v. Pawtucket Mutual Insurance Company, *Page 8 824 A.2d 458, 460 (R.I. 2003). Therefore, if the Limitations Provision unambiguously applies to suits brought pursuant to the Appraisal Provision, there are no genuine issues of material fact for this Court to determine, and the case must be dismissed as a matter of law.
"Whether the terms of a contract are ambiguous is a question of law."Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 62
(R.I. 2005) (citing Garden City Treatment Center, Inc. v. CoordinatedHealth Partners, Inc., 852 A.2d 535, 541 (R.I. 2004) (internal citations omitted)). "When determining whether a contract is ambiguous, the agreement is viewed in its entirety and the words used in the contract are given their ordinary meaning." Id. at 62-63 (citing Samos v. 43 EastRealty Corp., 811 A.2d 642, 643 (R.I. 2002)). "[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation." Perry v. Garey, 799 A.2d 1018, 1023 (R.I. 2002) (quoting Hilton v. Fraioli, 763 A.2d 599, 602 (R.I. 2000)). In determining whether or not there is an ambiguity in a contract, a court is "not to engage in mental or verbal gymnastics to hurdle over the plain meaning of the policy's language." Am. Commerce Ins. Co.,811 A.2d at 1193 (citing Mallane v. Holyoke Mutual Insurance Co., 658 A.2d 18, 20
(R.I. 1995)); Sjogren v. Metropolitan Prop. Cas. Ins. Co.,703 A.2d 608, 610 (R.I. 1997). Rather, "`[t]he question is . . . whether the language [of the contract] has only one reasonable meaning when construed . . . in an ordinary common sense manner.'" Sturbridge HomeBuilders, Inc., 890 A.2d at 62 (quoting Textron, Inc. v. Aetna Casualtyand Surety Co., 638 A.2d 537, 541 (R.I. 1994)). Consequently, it is incumbent upon the Court to construe the insurance policy in its entirety in order to determine whether or not there exists a relevant ambiguity. *Page 9 
 A. Legal Action
The Plaintiff argues that the law suit before the Court is not a "legal action" as contemplated by the Limitations Provision; or at the very least, there is an ambiguity as to whether or not the term "legal action" applies to suits brought pursuant to the Appraisal Provision. Looking at the totality of the circumstances surrounding the agreement, and according the plain and ordinary meaning to its express language, the Court rejects the Plaintiff's argument that the term "legal action" within the Limitations Provisions is ambiguous. See Lajayi v.Fafiyebi, 860 A.2d 680, 686 (R.I. 2004) (citing A.F. Lusi Construction,Inc. v. Peerless Insurance Co., 847 A.2d 254, 258 (R.I. 2004)). Moreover, the Court finds that the Limitations Provision clearly applies to suits brought pursuant to the Appraisal Provision.
The Limitations Provision states, in pertinent part, that no one may bring "legal action" against the Defendant under any of the terms of the coverage form which contains the Limitations Provision. The policy fails to explicitly define the term "legal action." However, that term "has been defined to be `an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement orprotection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'" See Cady v. IMC Mortg. Co., 2006 R.I. Super. LEXIS 131, *29, n. 27 (R.I.Super.Ct. 2006) (emphasis added) (citing Black's Law Dictionary 31 (8th ed. 2004) (quoting 1 Morris M. Estee, Estee's Pleadings, Practice and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)). "More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." Id. (citing Black's Law Dictionary 31). Here, the Plaintiff has brought a petition pursuant to § 10-3-4. Black's LawDictionary *Page 10 
defines a "petition," in part, as "a formal written application to the Court requesting judicial action . . ." or a "recital of facts which give rise to a cause of action." See Black's Law Dictionary 1145 (6th ed. 1990). Therefore, the term "legal action," by its plain and ordinary meaning, must apply to the present petition which is a judicial proceeding wherein the Plaintiff is requesting judicial action in order to enforce an alleged right.
Likewise, the Limitation Provision clearly applies to the Appraisal Provision. The two provisions exist in the same coverage form, and the Limitation Provision plainly and expressly controls any and all "legal actions" brought pursuant to any provisions in that form. The Plaintiff's petition under § 10-3-4 is only relevant in the context of the Appraisal Provision. Therefore, construed in the only reasonable manner, the Limitations Provision must apply to any suit brought pursuant to the Appraisal Provision, including the instant "legal action."
 B. Date of Loss
Having determined that the Limitations Provision unambiguously applies to the present action, the Court turns next to the Plaintiff's contention that under the present circumstances, the start date of the Limitations Provision is ambiguous or should otherwise be tolled. This argument is similarly unpersuasive, and the Court holds that the Limitations Provision clearly and unambiguously applies from the date of the damage, and is not tolled by any of the actions voluntarily and unnecessarily taken by the Defendant after the limitations period elapsed.
Under the Limitations Provision, no action may be brought concerning the insurance policy coverage form within "two years after the date on which the direct *Page 11 
physical loss or damage occurred." Rhode Island law has long-recognized as reasonable and valid contractually-created insurance policy time limitations which begin to run at the date of the loss. SeeHay, 824 A.2d at 460. In that case, the insured plaintiff did not file suit until nearly three years after his damage was suffered, well beyond the two-year limitations period of the policy. Id. The Hay Court summarily dismissed the insured's complaint as time-barred, stating that "[t]he limitations period in an insurance contract runs from the date of the loss." Id. at 460 (quoting Di Iorio, 402 A.2d at 748). The unambiguous Limitations Provision is nearly identical to that upheld inHay and Di Iorio and, therefore, it plainly and unequivocally runs starting from the "date on which the direct physical loss or damage occurred;" to wit: June 22, 1997.
The Court, again, is not persuaded by Plaintiff's argument that the Limitations Period should be tolled based on the Defendant's actions in 2002 and 2003. Under Rhode Island law, settlement negotiations may prevent a party from invoking a limitations period, but only in "exceptional circumstances," and then only "if accompanied by certain statements or conduct calculated to lull the claimant into a reasonable belief that his claim will be settled without a suit." McAdam v.Grzeklczyk, 911 A.2d 255, 259 (R.I. 2006) (emphasis added) (citingGagner v. Strekouras, 423 A.2d 1168, 1169 (R.I. 1980) (internal quotations omitted)). In McAdam, the Court stated that, "`[m]ere negotiations between [an] insurer and a claimant cannot alone justify the application of estoppel'; otherwise settlement negotiations would be frustrated and impeded." Id. (quoting Greater Providence Trust, Co. v.Nationwide Mutual Fire Insurance, Co., 116 R.I. 268, 272, 355 A.2d 718,720 (1976)). Rather, "there are two scenarios in which estoppel can arise: "(1) the insurer, by his actions or communications, *Page 12 
has assured the claimant that a settlement would be reached, thereby inducing a late filing, or (2) the insurer has intentionally continued and prolonged the negotiations in order to cause the claimant to let the limitation pass without commencing suit." Id. at 259-260 (quotingGagner, 423 A.2d at 1170 (internal citations omitted)).[8] In the present case, it is undisputed that the parties undertook no negotiation or communication between February 20, 1998 and sometime in April 2002. There is no evidence on the record of any express representation or other affirmative conduct on the part of the Defendant which amounts to a representation that might reasonably have deceived or induced a reliance by the Plaintiff. Given the content and tenor of the communications contained in the file and referenced herein, it is unreasonable to assume that the Defendant's willingness to consider any additional information was a deliberate attempt to prolong negotiations.[9] Therefore, the Limitations Period must not be tolled, and it must be applied from the date of the loss, not when the Defendant closed its first, second or third investigation. *Page 13 
 IV Conclusion
The storm which caused the direct damage to the Plaintiff's property and brought about this litigation occurred on June 22, 1997. The Limitations Provision under the policy took effect on June 22, 1999, in clear, precise, and all-encompassing language barring any and all legal actions related to the terms of the coverage form, including the Appraisal Provision. The Plaintiff's present law suit — a legal action brought pursuant to the Appraisal Provision as an arbitration clause under § 10-3-4 — was filed on February 9, 2005, over seven years after the damage occurred and over five years after the Limitations Provision barred the suit. Moreover, the Plaintiff has failed to sustain its burden of directing this Court's attention to any evidence which would indicate that the Defendant lulled the Plaintiff into believing that filing suit before June 22, 1999 was unnecessary.
The mere fact that the Defendant twice reopened its investigation is irrelevant for purposes of this decision, as these voluntary re-investigations occurred long after the suit was time-barred. Nothing in the correspondence between the parties after the Limitations Provision expired could be interpreted as an assurance that the Defendant would settle the claim, nor could they be interpreted as an attempt to prolong negotiations. Nor would the reopened investigations of 2002 and 2003 rise to the level of deception required under Rhode Island case law to prevent the application of the Limitations Provision, even if those investigations were relevant.
Considering the evidence in the light most favorable to the Plaintiff, the Court nevertheless finds that there are no issues of material fact in the case. The unambiguous, plain and controlling language of the insurance policy's Limitations Provision bars the *Page 14 
present action, as it was not brought within two years of the storm which damaged the Plaintiff's property. Beyond this, the Plaintiff has provided no mitigating explanation regarding the long delay between the loss and this suit, and no evidence that suggests that the Limitations Period should be tolled. Therefore, the Court concludes that Defendant is entitled to judgment as a matter of law.
The Plaintiff's Motion for Summary Judgment is therefore DISMISSED, and the Defendant's Motion for Summary Judgment is hereby GRANTED.
Counsel will submit appropriate Order for Entry.
[1] A "Cybermation machine" is a machine used for automated sheet metal fabrication such as used in cooling systems within a building.
[2] Defendant explicitly stated, ". . . [t]he foregoing in no way constitutes a waiver or relinquishment by [Defendant] and its subsidiaries of any defenses or rights available to it under the terms and provisions of your policy of insurance or under applicable law. In addition, the foregoing in no way restricts or limits [Defendant] from relying upon and asserting other facts and grounds that are, or may become available to it."
[3] The August 18, 2003 correspondence also contains a reference to an earlier request by Plaintiff to reopen the investigation for damages. The letter references correspondence sent to Plaintiff by General Adjuster, Todd Smith, dated October 7, 2002 indicating to Plaintiff that based upon information presented (at that time) no additional payment would be made.
[4] Plaintiff's letter to Mark Perry, Claims Representative for Travelers Property Casualty, dated February 3, 2004.
[5] Letter response from Mark Perry on behalf of Defendant to Plaintiff dated March 5, 2004.
[6] "[A]n `appraisal' procedure may be equated with `arbitration.'"Waradzin v. Aetna Casualty Sur. Co., 570 A.2d 649, 650 (R.I. 1990) (citing Grady v. Home Fire and Marine Insurance Co., 27 R.I. 435,63 A. 173 (1906)). The "labels [that] are used in describing the procedure called for in a policy are not controlling . . . [rather] it is the substance of the transaction that determines its character."Id. (citing Couch on Insurance 2d § 50:5 at 165 (Rev. ed. 1982). As the provision in the present case is nearly identical to those quoted inWaradzin and Grady, the Court construes the Appraisal Provision to be an arbitration clause subject to § 10-3-4.
[7] "For many years [courts] were divided on the issue of whether a . . . limitations [period] was a jurisdictional bar to prosecution or an affirmative defense." State v. Lambrechts, 585 A.2d 645, 646-647 (R.I. 1991) (internal citations omitted). However, the majority of courts, including the Rhode Island Supreme Court, now hold that "limitations [are] a waivable affirmative defense." Id.
[8] "When deciding whether a claimant has been lulled into believing that filing suit is unnecessary, courts must look for any evidence that would support a reasonable belief that the matter would be settled."McAdam, 911 A.2d at 260 (citing Gagner, 423 A.2d at 1170). The Rhode Island Supreme Court has emphasized that "`[t]here must be a showing of an express representation or other affirmative conduct which amounts to a representation that could reasonably deceive another and induce a reliance that would work to the disadvantage of the individual relying upon the representation.'" Id. (emphasis added) (quoting Gross v.Glazier, 495 A.2d 672, 674 (R.I. 1985)). "An insurer's concession of liability is among the statements that could induce a claimant's reasonable belief that suit is unnecessary." Id. (citingGagner, 423 A.2d at 1170). However, a defendant attorney's failure to call the plaintiff back when scheduled to do so is not alone an indicia of a reasonable belief that suit is unnecessary. Id.
[9] Cf. Hay v. Pawtucket Mutual Ins. Co., 824 A.2d 458, 461 (R.I. 2003).