NATIONAL REFRIGERATION, INC. et al.

v.

The TRAVELERS INDEMNITY COMPANY OF AMERICA et al.

No. 2007–252–Appeal.

Supreme Court of Rhode Island.

May 29, 2008.

Richard E. Fleury, Esq., East Greenwich, for Plaintiff.

Paul S. Callaghan, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

In this insurance contract case, the plaintiff, National Refrigeration, Inc. (plaintiff), appeals from an entry of summary judgment in favor of the defendant, The Travelers Indemnity Company of America (defendant) after the plaintiff filed a petition to enforce an arbitration clause in the insurance contract. Summary judgment was granted on the grounds that the plaintiff initiated its petition for arbitration years after the time expressly provided for in the contract between the two parties. This case came before the Supreme Court for oral argument on May 7, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

On August 29, 1996, defendant issued an insurance policy (the contract or the policy) to plaintiff, which covered damages to plaintiff's business property, in addition to certain lost income and expenses resulting

from that damage. On June 22, 1997, an electrical storm damaged plaintiff's Cybermation Machine, a machine used for cutting and fabricating ductwork in air cooling and heating systems. After the storm, plaintiff filed a claim with defendant for $102,951.54. In 1997 and 1998, defendant issued payments to plaintiff totaling $20,000 and $8,291.91, respectively.

The defendant's decision not to reimburse plaintiff for the full replacement of the machine became a source of contention between the two parties. The plaintiff insisted that it should be reimbursed for the cost of replacing the Cybermation Machine; defendant had reimbursed plaintiff only for the cost of repairing the damaged machine. Four years later, in April 2002, plaintiff requested that defendant reopen the investigation into damages to the machine, in addition to plaintiff's claim for loss of business. Although defendant agreed to reopen the investigation, it denied plaintiff's claims in October 2002. In July 2003, plaintiff sent defendant additional correspondence, again requesting the replacement cost for acquiring a new Cybermation Machine, in addition to reimbursement for the lost profits suffered as a result of the damaged machine.

The plaintiff also informed defendant that it was prepared to invoke the policy's appraisal clause if the parties could not reach an agreement on plaintiff's claims.

The policy's appraisal clause provided that:

"If [the parties] disagree on the value of the property * * * either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge * * *. The appraisers will state separately the value of the property

* * * or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding."

In its reply, in August 2003, defendant informed plaintiff that it would further investigate its claims. By that same correspondence, defendant made clear to plaintiff that its agreement to investigate the claims in no way constituted a waiver of any defenses or rights to which defendant was entitled under the policy. In that same month, defendant denied plaintiff's claim for additional damages and emphasized that it had informed plaintiff in October 2002 that no additional payments would be made for the damage to the Cybermation Machine and that defendant's position had not changed.

In February 2004, plaintiff contacted defendant, requesting an appraisal pursuant to the terms of the contract between the two parties. The defendant denied plaintiff's request, stating that plaintiff had not complied with the policy provisions, including a limitations clause that provided, in relevant part:

"No one may bring a legal action against us under this Coverage Form unless:

"a. There has been full compliance with all of the terms of this Coverage Form; and

"b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred."

Almost a year later, on February 9, 2005, plaintiff filed a petition for arbitration with the Superior Court, seeking to enforce the contract's appraisal clause. Before the case reached trial, the parties filed cross-motions for summary judgment. For its part, defendant contended that the contract's limitations clause barred plaintiff's claim. More specifically, defendant asserted that plaintiff could not maintain

an action for appraisal because nearly eight years had passed since plaintiff's Cybermation Machine was damaged—far in excess of the two-year limitations period provided for in the contract. The trial justice agreed and, finding that there were no genuine issues of material fact, he granted defendant's motion for summary judgment while denying plaintiff's motion for summary judgment. The trial justice ruled that the policy's two-year limitations provision applied to lawsuits commenced under the contract's appraisal clause. He further noted that defendant's conduct had not tolled the policy's limitation's clause, as the two-year period had expired long before defendant agreed to reopen the investigation into plaintiff's claims. Therefore, the trial justice ruled, the plain language of the contract between the parties foreclosed plaintiff from thereafter challenging the insufficiency of the reimbursement it had received for damages more than seven years earlier. The plaintiff timely appealed to this Court from the trial justice's grant of defendant's motion for summary judgment.

## II

### Analysis

On appeal, plaintiff argues that the trial justice erred in ruling that plaintiff's petition for arbitration was time-barred under the plain language of the contract and that defendant's actions had not tolled the limitations period. The defendant, by contrast, asserts that the contract's two-year limitation for commencing legal action with respect to damages under the policy applies to petitions for arbitration and that, therefore, plaintiff's petition was not timely. The defendant further asserts that it did not assure plaintiff that a settlement would be forthcoming, nor did its actions induce plaintiff's late filing.

### A

### Standard of Review

■ "This Court reviews a grant of summary judgment *de novo,* applying the same standards as the motion justice." *Smiler v. Napolitano,* 911 A.2d 1035, 1038 (R.I.2006) (citing *Andreoni v. Ainsworth,* 898 A.2d 1240, 1241 (R.I.2006)). "Summary judgment is appropriate when no genuine issue of material fact is evident from 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' and the motion justice finds that the moving party is entitled to prevail as a matter of law." *Id.* (quoting Super. R. Civ. P. 56(c)).

### B

### Contract Terms

■ The plaintiff first protests that the contract provision that requires the commencement of legal actions within two years of the property damage or loss does not apply to its petition for arbitration. The defendant, however, contends that the trial justice properly recognized that plaintiff's petition for arbitration of the appraisal dispute is a legal action that was time-barred under the policy's terms.

■ "It is well established that '[w]hen interpreting the contested terms of [an] insurance policy, we are bound by the rules established for the construction of contracts generally.'" *Metro Properties, Inc. v. National Union Fire Insurance Co.,* 934 A.2d 204, 208 (R.I.2007) (quoting *Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I.2003)). Therefore, "[t]he rights and liabilities of the parties to an insurance contract are to be ascertained in accordance with the terms as set forth therein." *DiIorio v. Abington Mutual Fire Insurance Co.,* 121 R.I. 689, 694, 402 A.2d 745, 747 (1979)

(citing *Donahue v. Hartford Fire Insurance Co.*, 110 R.I. 603, 295 A.2d 693 (1972)). When affording the terms of the policy their plain and ordinary meaning, this Court looks not to "what the insurer subjectively intended, but rather [to] 'what the ordinary reader and purchaser would understand [the terms] to mean.'" *Metro Properties, Inc.*, 934 A.2d at 208 (quoting *Zarrella*, 824 A.2d at 1259). Finally, this Court has held that a "limitations period in an insurance policy is a term to which the parties are specifically bound." *DiIorio*, 121 R.I. at 694, 402 A.2d at 747 (citing *Greater Providence Trust Co. v. Nationwide Mutual Fire Insurance Co.*, 116 R.I. 268, 355 A.2d 718 (1976)).

The limitations clause set forth in this contract provides, in relevant part that: "[n]o one may bring a *legal action* against us under this Coverage Form unless: * * * 'b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.'" (Emphasis added.) However, the contract itself fails to define "legal action," and although this Court has likewise never defined the term, therefore it is clear to us that a petition for arbitration is a type of legal action.

In defining the term "action," Black's Law Dictionary notes the following:

"An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." Black's Law Dictionary 31 (8th ed. 2004) (quoting 1 Morris M. Estee, *Estee's Pleadings,*

*Practice, and Forms* § 3 at 1 (Carter P. Pomeroy ed., 3d ed. 1885)).

Under Rhode Island law, if a party fails to abide by a contract provision that requires the arbitration of grievances, a petition may be filed with the Superior Court seeking a court order directing the parties to arbitrate the grievance. G.L. 1956 § 10–3–4. We conclude that this type of petition fits squarely within the definition of legal action. Indeed, by filing such a petition, the petitioning party is requesting that the court interpret the contract to determine whether arbitration is necessary and enter a decree to that effect.

We are also further persuaded by Black's Law Dictionary's definition of the similar term "legal act." It defines legal act as "[a]n action * * * that creates a legally recognized obligation; an act that binds a person in some way." Black's Law Dictionary at 912. Because a trial justice's decision on a petition for arbitration creates a legally binding obligation, such a petition is properly a "legal action" for purposes of construing the contract at issue in this matter.

Therefore, in February 2005, when plaintiff filed a petition for arbitration of the appraisal dispute with the Superior Court, it filed a legal action. By this time, more than seven years had passed since the damage to plaintiff's Cybermation Machine, making the petition a legal action that was brought clearly beyond the two-year period specified in the contract.

### C

### Estoppel

The plaintiff alternatively argues that this Court should hold that defendant is estopped from invoking the time limitation as a defense because defendant's actions during this time period led it to believe the matter would be resolved and, therefore,

resulted in its failure to timely file the petition for arbitration. The plaintiff also contends that the contract terms made it impossible to comply with the two-year time limitation provisions. We disagree.

"[I]n exceptional circumstances, settlement negotiations can estop a party from invoking the statute of limitations if accompanied 'by certain statements or conduct calculated to lull the claimant into a reasonable belief that his claim will be settled without a suit.'" *McAdam v. Grzelczyk*, 911 A.2d 255, 259 (R.I.2006) (quoting *Gagner v. Strekouras*, 423 A.2d 1168, 1169 (R.I.1980)). This Court has emphasized, however, the exceptional nature of this principle. Indeed, "[m]ere negotiations between [an] insurer and a claimant cannot alone justify the application of estoppel." *Id.* (quoting *Greater Providence Trust Co.*, 116 R.I. at 272, 355 A.2d at 720). If we were to hold otherwise, "settlement negotiations would be frustrated and impeded." *Id.*

Estoppel can arise, however, if "(1) the insurer, by his actions or communications, has assured the claimant that a settlement would be reached, thereby inducing a late filing, or (2) the insurer has intentionally continued and prolonged the negotiations in order to cause the claimant to let the limitation pass without commencing suit." *McAdam*, 911 A.2d at 260 (quoting *Gagner*, 423 A.2d at 1170).

Nevertheless, such exceptional circumstances as could lead to the successful invocation of the doctrine of estoppel to toll the limitations period are absent from this case. In 1998, when defendant invited plaintiff to submit further information to support its claim for full replacement damages for the Cybermation Machine, it also rejected plaintiff's claim. The plaintiff had until June 1999 to arbitrate the issue of damages, but instead plaintiff sat on its right to invoke that remedy. Without informing defendant that it was still gathering information to substantiate its claim for replacement costs, plaintiff waited until April 2002 to contact defendant again.

Although defendant did agree to investigate plaintiff's claims in 2002 and 2003 this did not automatically estop defendant from invoking the insurance policy's limitations provision. *See Hay v. Pawtucket Mutual Insurance Co.*, 824 A.2d 458, 460–61 (R.I. 2003) (letter by insurer indicating willingness to consider additional information was not an attempt to prolong negotiations beyond limitations period). The defendant made it abundantly clear to plaintiff on at least three subsequent occasions that it would not be compensating plaintiff any further for damages under the contract. Furthermore, at no time did defendant assure plaintiff that a settlement of the dispute would be reached.

Despite defendant's refusal to compensate plaintiff further for its damages, plaintiff waited years before petitioning the Superior Court for arbitration of appraisal of damages. Indeed, it was not until February 2005, almost eight years after its Cybermation Machine was damaged, that plaintiff instituted this proceeding.

The plaintiff emphasizes that this Court's opinion in *Messler v. Williamsburg City Fire Ins. Co.*, 42 R.I. 460, 108 A. 832 (1920), is controlling and requires that this Court toll the limitations provision set forth in the contract. We conclude, however, that the facts in *Messler* are strikingly different from the facts currently before this Court. In *Messler*, this Court held that a one-year limitations provision should be tolled because, under the contract terms, "[it was] manifest that it may become impossible for an insured acting diligently and in good faith to comply with all of the provisions of the policy with

sufficient dispatch to enable him to bring suit within twelve months [after the damage]." *Id.* at 463, 108 A. at 834. Unlike the situation in *Messler,* we fail to see that it would have been impossible for plaintiff to comply with the two-year limitations provision in this case. Rather, defendant informed plaintiff in 1997 that no further payments would be forthcoming, at which time plaintiff could have requested an appraisal and, if such request was denied, plaintiff could have petitioned the Superior Court to order the appraisal. Instead of taking this prudent course, plaintiff sat on its right to commence such an action until well beyond the two-year period provided for in the contract.

We cannot sanction such a practice that is not only antithetical to the contract's terms but also to society's need for finality. *See Ryan v. Roman Catholic Bishop of Providence,* 941 A.2d 174, 181 (R.I.2008). In *Ryan,* this Court recognized that the similar statutes of limitation "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id.* (quoting *Order of Railroad Telegraphers v. Rail-*

*way Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). Limitations periods, therefore, balance the "individual person's right to seek redress for past grievances against the need of society and the judicial system for finality-for a closing of the books." *Ryan,* 941 A.2d at 181. With these principles in mind, we conclude that the trial justice did not err in granting summary judgment in favor of the defendant. The plaintiff's belated attempt to seek arbitration of the damages payable under the policy is barred by the plain language of the contract, and the defendant's actions in no way tolled the operation of the policy's limitation provision.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.