DECISION
Before this Court is the Motion for Summary Judgment filed by Defendant State of Rhode Island (the State), asserting that Plaintiffs are barred from bringing this action against the State by the three-year statute of limitations contained in G.L. 1956 § 9-1-25. Plaintiffs filed a timely objection, arguing that the doctrine of equitable estoppel bars the State from raising a statute of limitations defense. In a supplemental filing, the State maintains that a governmental entity cannot be equitably estopped from raising this defense based on the words or actions of an agent of the government who lacked authority. For the reasons that follow, this Court denies the State's motion. *Page 2 
 I Facts and Travel A The Freight Rail Improvement Project
This action centers around the Freight Rail Improvement Project (FRIP or the Project), a $225,000,000 construction project improving twenty-two (22) miles of railroad track and adding a third rail line independent of the Northeast corridor. The Project was commissioned by the State, which contracted with Defendants Cardi Corporation, National Railroad Passenger Corporation (a/k/a/ Amtrak), and Aecom USA, Inc. (f/k/a DMJM + Harris, Inc.) to complete various aspects of the construction. The Project commenced in or around July 2002, and was completed in or around June 2007.
Plaintiffs Frank and Cheryl Caliri (the Caliris) own property located at 720-722 Harris Avenue in Providence, Rhode Island. Plaintiff Aetna Manufacturing Co., Inc. is a tenant of this building, occupying approximately two-thirds of the building's available space.[1] Pursuant to the FRIP, construction took place on railroad tracks lying directly behind and abutting Plaintiffs' property. (Pls.' Mem. in Supp. of Their Objection to Def. State of Rhode Island's Mot. for Summ. J. at 2 (hereinafter "Pls.' 10/02/09 Mem.")). This construction work was significant, including excavation, removal of soil, and installation of sheet steel through the use of cranes, pile drivers, and hydraulic hammers.Id. at 2-3. *Page 3 
On or about May 15, 2003, Plaintiff Frank Caliri (Mr. Caliri) noticed cracks and damage to the building on his property. (Aff. of Frank Caliri ¶ 7). He then contacted George Marfeo (Mr. Marfeo), the State's on-site Resident Engineer employed by the Rhode Island Department of Transportation (RIDOT), to report the damage.Id. at ¶ 8. On May 16, 2003, Mr. Marfeo and his aide, John Burro, inspected the alleged damage at 720-722 Harris Avenue. (Def. State of Rhode Island's Mem. of Law in Supp. of its Mot. for Summ. J. at 3 (hereinafter "Def.'s 8/21/09 Mem.")). According to Mr. Caliri, Mr. Marfeo acknowledged the damage to the property, but stated that the State would not assess and address the damage until the entire FRIP was completed. (Aff. of Frank Caliri ¶ 9). According to Plaintiffs, Mr. Marfeo revealed that continuous damage to Plaintiffs' property might occur while the FRIP was in progress, so any assessment prior to its completion would be premature.Id. At that initial meeting in May 2003, Mr. Marfeo relayed to Mr. Caliri that the Project was expected to be completed in three to five weeks. (Def.'s 8/21/09 Mem. at 3).
In January 2005, Plaintiffs' attorney William J. Lynch (Atty. Lynch) spoke with Mr. Marfeo for the first time regarding the alleged damage to Plaintiffs' property. (Aff. of William J. Lynch, Esq. ¶ 5). According to an affidavit submitted by Atty. Lynch, Mr. Marfeo stated that the State was assuming liability for damage to the Caliris' property, and "it was simply a matter of the long-term construction project being completed" before a fair assessment as to the amount of damages could be conducted.Id. at ¶ 7. Atty. Lynch further states, by way of affidavit, that subsequent to January 31, 2005, he had numerous other discussions with Mr. Marfeo in which Mr. Marfeo indicated that the State was still accepting liability for the damage incurred.Id. at ¶ 10. In addition, Mr. *Page 4 
Caliri states that from May 16, 2003, through completion of the FRIP in June 2007, he contacted Mr. Marfeo from time to time to report his concerns about the ongoing damage to his property. (Aff. of Frank Caliri ¶ 11).
In March 2007, Mr. Marfeo informed Atty. Lynch that he had retired from his position with the State and that Atty. Lynch should instead contact the attorneys for RIDOT to continue discussions. (Aff. of William J. Lynch, Esq. ¶ 11). Atty. Lynch thereafter contacted Jerome Williams, then-Director of RIDOT.Id. Atty. Lynch and Director Williams corresponded several times over a three-month span, and each time Director Williams confirmed that the State conceded liability for the damage and that the only issue was completion of the Project itself so damage assessments could be conducted. Id. at ¶¶ 11-15.
In July 2007, Atty. Lynch was contacted by Annette P. Jacques, Senior Legal Counsel for RIDOT. Id. at ¶ 16. By way of affidavit, Atty. Lynch asserts that Atty. Jacques confirmed that the State was not contesting liability and further indicated that the State was prepared to go forward with its own physical inspection of Plaintiffs' building. Id. at ¶ 17. Seven months later, on December 7, 2007, Atty. Jacques again contacted Mr. Lynch to update him on the status of the case. Id. at ¶ 18. She affirmed that the State was accepting liability, but that the review of the damage was taking longer than originally anticipated.Id. Accordingly, she did not want Atty. Lynch or Plaintiffs to be concerned at the length of time it was taking to resolve the matter. Id.
From January 2008 through April 2008, Atty. Jacques was in frequent communication with Atty. Lynch. (Aff. of William J. Lynch, Esq. ¶¶ 19-28). At each instance, she confirmed that the State had long since conceded liability, but stated that the *Page 5 
damage assessments were taking much longer than expected.Id. In April 2008, the Caliris were referred to Attorney Alan Gelfuso (Atty. Gelfuso), who they then retained to further their interests in this matter. Id. at ¶ 29.
On April 30, 2008, Atty. Gelfuso contacted Atty. Jacques regarding a potential settlement between the parties. (Pls.' Verified Compl. ¶ 18). On May 30, 2008, Atty. Jacques wrote to Atty. Gelfuso to advise that a walk-through had been scheduled for June 4, 2008. Id. It appears that in previous correspondence, Atty. Gelfuso had asked the State to waive the applicable statute of limitations, because in the May 30, 2008 letter, Atty. Jacques stated that "under no circumstances can the State waive the statute of limitations." (Pls.' 10/02/09 Mem., Ex. 6 (5/30/08 correspondence)). Settlement discussions continued throughout June 2008, however, the parties were unable to reach an agreement and this action was ultimately brought in January 2009. (Def.'s 8/21/09 Mem. at 4; Pls.' Verified Compl.).
 B Motion for Summary Judgment
The State moved for summary judgment on August 21, 2009. The State argues that its liability is limited by the three-year statute of limitations contained in § 9-1-25, which provides as follows:
 "When a claimant is given the right to sue the state of Rhode Island, any political subdivision of the state, or any city or town by a special act of the general assembly, or in cases involving actions or claims in tort against the state or any political subdivision thereof or any city or town, the action shall be instituted within three (3) years from the effective date of the special act, or within three (3) years of the accrual of any claim of tort. Failure to institute suit within the three (3) year period shall constitute a bar to the bringing of the legal action." *Page 6 
Plaintiffs raise two issues in opposition to the State's motion. First, they assert that the doctrine of equitable estoppel bars the State from availing itself of the statute of limitations. In the alternative, Plaintiffs argue that the damage to their property caused by the FRIP constitutes a continuous tort, thus tolling the statute of limitations. The State counters that the doctrine of equitable estoppel only applies where defendant (1) lulled Plaintiffs into believing that a settlement would be reached, or (2) intentionally prolonged settlement negotiations. The State asserts that it has not done either, and thus is not estopped from asserting the statute of limitations defense. Further, the State maintains that the doctrine of equitable estoppel cannot be used against the State as a governmental entity based on the words or actions of an agent lacking in authority.
 II Standard of Review
It is well-settled that summary judgment is a drastic remedy that should be cautiously applied. Giuliano v. Giuliano,949 A.2d 386, 390-91 (R.I. 2008); Johnston v. Poulin,844 A.2d 707 (R.I. 2004); Wright v. Zielinski,824 A.2d 494 (R.I. 2003); Petrone v. Town of Foster,769 A.2d 591 (R.I. 2001); Ardente v. Horan,117 R.I. 254, 256-57, 366 A.2d 162, 164 (R.I. 1976). Summary judgment is only appropriate when "`viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" Montiero v. Silver LakeI, L.P., 813 A.2d 978, 980 (R.I. 2003) (quoting DeltaAirlines, Inc. v. Neary, 785 A.2d 1123, 1126 (R.I. 2001)). *Page 7 
In considering a motion for summary judgment, a hearing justice "`must review the pleadings, affidavits, admissions, answers to interrogatories, and other appropriate evidence from a perspective most favorable to the party opposing the motion.'"Giuliano, 949 A.2d at 391 (quoting Steinberg v. State,427 A.2d 338, 340 (R.I. 1981)). "The parties opposing summary judgment may not `rely upon mere allegations or denials in their pleadings. Rather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact.'" Montiero,813 A.2d at 981 (quoting Bourg v. Bristol Boat Co.,705 A.2d 969, 971 (R.I. 1998)).
It is equally well-settled that the "`purpose of the summary judgment procedure is issue finding, not issue determination.'"Giuliano, 949 A.2d at 391 (R.I. 2008) (quoting IndustrialNational Bank v. Peloso,121 R.I. 305, 307, 397 A.2d 1312, 1313 (R.I. 1979));Gliottone v. Ethier, 870 A.2d 1022, 1028 (R.I. 2005);Weaver v. American Power Conversion Corp.,863 A.2d 193, 200 (R.I. 2004); Sea Fare's American Café,Inc. v. Brick Market Place Associates,787 A.2d 472, 476 (R.I. 2001). Therefore, "in passing on a motion for summary judgment, the question for the trial justice is whether there is a genuine issue as to any material fact and not how that issue should be determined." O'Connor v. McKanna,116 R.I. 627, 633, 359 A.2d 350, 353 (R.I. 1976). In the specific context of a statute of limitations defense and an equitable estoppel argument in response thereto, summary judgment should be denied where "there are factual differences in the record which should be resolved by a trier of fact rather than by a motion for summary judgment." Gagner v. Strekouras,423 A.2d 1168, 1170-71 (R.I. 1980).
 III Analysis *Page 8 A Equitable Estoppel
The State maintains that the three-year statute of limitations contained in § 9-1-25 bars Plaintiffs from bringing this action. Statutes of limitations are traditionally employed to "promote certainty and finality and avoid stale claims." Roe v.Gelineau, 794 A.2d 475, 485 (R.I. 2002). In other words, they "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."Ryan v. Roman Catholic Bishop of Providence,941 A.2d 174, 180-81 (R.I. 2008) (quoting Order of RailroadTelegraphers v. Railway Express Agency, Inc.,321 U.S. 342, 348-49 (1944)). However, the Rhode Island Supreme Court has recognized that in exceptional circumstances, "settlement negotiations can estop a party from invoking the statute of limitations if accompanied `by certain statements or conduct calculated to lull the claimant into a reasonable belief that his claim will be settled without a suit.'" McAdam v. Grzelczyk,911 A.2d 255, 259 (R.I. 2006) (quoting Gagner,423 A.2d at 1169).
Our Supreme Court has recently reiterated that this exception to the statute of limitations, known as the doctrine of equitable estoppel, may arise in two scenarios: "`(1) [where] the insurer, by his actions or communications, has assured the claimant that a settlement would be reached, thereby inducing a late filing, or (2) [where] the insurer has intentionally continued and prolonged the negotiations in order to cause the claimant to let the limitation pass without commencing suit.'" NationalRefrigeration, Inc. v. Travelers Indemnity Company of America,947 A.2d 906, 911 (R.I. 2008) (quoting McAdam,911 A.2d at 260). In making a determination as to whether a claimant "has *Page 9 
been lulled into believing that filing suit is unnecessary," courts must determine whether there exists "evidence that would support a reasonable belief that the matter would be settled."McAdam, 911 A.2d at 260. Our Supreme Court has frequently stated that chief among such evidence is a concession of liability or other statements or conduct. See NationalRefrigeration, 947 A.2d at 911; McAdam, 911 A.2d at 260;Gagner, 423 A.2d at 1169-70. Mere settlement negotiations without more is not sufficient to invoke the doctrine of equitable estoppel in response to a statute of limitations argument.See National Refrigeration, 947 A.2d at 911 (affirming summary judgment and refusing to apply estoppel where policy required compliance with all policy terms and suit within two years but plaintiff requested investigation into amount of damages four years after damage incurred); McAdam, 911 A.2d at 260 (denying estoppel where plaintiff failed to raise any issues of material fact that there were intentionally prolonged negotiations; rather insurer simply failed to make a promised phone call and therefore plaintiff had no reasonable basis for believing matter would settle without suit); cf. Gagner, 423 A.2d at 1170 (issues of material fact existed as to application of estoppel to statute of limitations argument where plaintiff's attorney and insurance adjuster began negotiations prior to expiration of statute of limitations and continued negotiations after it ran).
This Court readily acknowledges that the doctrine of equitable estoppel is intended to apply only in exceptional
circumstances. National Refrigeration,947 A.2d 906; McAdam,911 A.2d at 259 (quoting Gagner, 423 A.2d at 1169). Whether this case presents such exceptional circumstances which warrant the application of the doctrine of equitable estoppel should be left for the trier of fact. See Gagner, 423 A.2d at 1170. In their Memoranda in Support of Objection to State's Motion for Summary Judgment, as *Page 10 
well as various affidavits attached to the submissions, Plaintiffs detail the discussions both Mr. Caliri and his first attorney, Atty. Lynch, had with various agents of RIDOT. As detailed in section I-A supra, Mr. Caliri asserts that Mr. Marfeo, the State's on-site Resident Engineer for the FRIP employed by RIDOT, came out to the Harris Avenue property to inspect the alleged damages in May 2003. According to Mr. Caliri, Mr. Marfeo acknowledged the damages but stated that a proper assessment could not be conducted until the Project was completed. In January 2005, Atty. Lynch first spoke with Mr. Marfeo, who reaffirmed his May 2003 statement: the State was assuming liability for the damage but a fair assessment as to the amount of damages could not be conducted until the Project was completed. Those communications between Atty. Lynch and Mr. Marfeo continued from time to time over a period of several years until Mr. Marfeo's retirement. After March 2007, Atty. Lynch corresponded with then-Director Williams and Senior Legal Counsel, Atty. Jacques, both of whom affirmed Mr. Marfeo's prior, consistent position that the State was conceding liability but that damages could not be assessed until the Project was completed. Notably, the Project was not completed until June 2007, almost five (5) years after the Project began in July 2002 and more than one (1) year beyond when the three-year statute of limitations as to Plaintiffs' claim expired according to the State, in March 2006.
Viewing all the facts and the reasonable inferences therefrom in the light most favorable to Plaintiffs, including the time line and the series of communications between the Plaintiffs and/or their legal counsel and representatives of RIDOT, this Court concludes that there are genuine issues of material fact that should be left to the trier of fact as to whether the settlement discussions and the consistent statements made by a *Page 11 
representative of RIDOT caused Plaintiffs to let the statute of limitations pass without commencing suit. NationalRefrigeration, 947 A.2d at 911; Gagner, 423 A.2d at 1170. Simply put, there are issues of fact concerning whether RIDOT prolonged the negotiations by putting off the assessment of Plaintiffs' damages until after the Project was completed, which completion date was more than one (1) year past the expiration of the three-year statute of limitations. See NationalRefrigeration, 947 A.2d at 911; Gagner, 423 A.2d at 1170. Such conduct is one of the scenarios discussed in NationalRefrigeration and under the facts presented in this case, the trier of fact should determine whether the application of the doctrine of equitable estoppel is warranted.
 B Authority of Agents of RIDOT
Also before this Court is whether Plaintiffs were entitled to rely on Mr. Marfeo's, and later Director Williams' and Atty. Jacques' assertions that the State was conceding liability for the damage and that nothing could be done until the Project was completed. The State argues that Plaintiffs were not entitled to rely on Mr. Marfeo's assertions as he lacked authority to act on behalf of the State. According to the State, he was neither authorized to negotiate settlements nor to waive the statute of limitations. The State fails to address in any respect Plaintiffs' reliance on the statements made by Director Williams and RIDOT's Senior Legal Counsel.[2]
The prevailing Rhode Island case law generally affirms the State's argument: "the authority of a public agent to bind a municipality must be actual[;]" apparent authority is insufficient.Potter v. Crawford, 797 A.2d 489, 492 (R.I. 2002).See also Casa DiMario, *Page 12 Inc. v. Richardson, 763 A.2d 607, 610 (R.I. 2000);Warwick Teachers' Union Local No. 915 v. WarwickSchool Committee, 624 A.2d 849, 850-51 (R.I. 1993);School Committee of Providence v. Board of Regents forEducation, 429 A.2d 1297, 1302 (R.I. 1981). The principle behind this line of cases is to prevent harm to the government caused by agents acting without authority.
In Romano v. Retirement Bd. of the Employees' Retirement Sys.of State of Rhode Island, 767 A.2d 35 (R.I. 2001), the Supreme Court thoroughly analyzed the line of cases determining whether the doctrine of equitable estoppel applies to a governmental entity where the alleged representation or conduct relied upon wasultra vires or in conflict with applicable law. In particular, the Romano Court reviewed the holdings in CasaDiMario, 763 A.2d at 610, State v. Rhode Island Alliance ofSocial Services Employees, Local 580, SEIU,747 A.2d 465, 469 (R.I. 2000), El Morocco Club,Inc. v. Richardson, 746 A.2d 1228, 1233-34 (R.I. 2000) andTechnology Investors v. Town of Westerly,689 A.2d 1060, 1062 (R.I. 1997), to emphasize that estoppel will not apply where the actions or conduct of an agent of the government contravenes state law. Romano, 767 A.2d at 39-40, 43. Relying on the aforementioned cases, the Romano Court rejected the application of estoppel where a retirement counselor and the executive director of the State Retirement Board advised plaintiff of certain retirement benefits which contradicted a clear statutory mandate. Id. However, the Court also found that despite the doctrine of equitable estoppel's infrequent application, "[t]here have been and will continue to be many situations . . . in which the [doctrine] can be applied against governmental entities without doing violence to any state statutory mandate or to the requirement that officials be duly authorized before their agencies will be estopped." *Page 13 Romano, 767 A.2d at 42. Further, the Court confirmed that "`in an appropriate factual context the doctrine of estoppel should be applied against public agencies to prevent injustice and fraud where the agency of officers thereof, acting within theirauthority, made representations to cause the party seeking to invoke the doctrine either to act or refrain from acting in a particular manner to his [, her, or its] detriment.'"Romano, at 39 (quoting Ferrelli v. Department of EmploymentSecurity,106 R.I. 588, 594, 261 A.2d 906, 910 (R.I. 1970)) (emphasis supplied).
As contemplated in Romano, the factual context of this case may present exceptional circumstances which warrant the application of the doctrine of estoppel even in light of the lack of authority argument raised by the State. The State has not demonstrated that the representations by a RIDOT representative that the damages could not be assessed until after the Project was completed are in contravention of any statutory mandate. Further, the State fails to consider that the original representations made by Mr. Marfeo were confirmed by Director Williams, who has not been alleged to have lacked authority to make such representations, thereby allowing this Court to reasonably infer — in the light most favorable to Plaintiffs — that Mr. Marfeo had the authority of his Director to make such representations to Plaintiffs between March 2003 and March 2006, which representations prolonged the negotiations past the three-year statute of limitations period. Plaintiffs have raised genuine issues of material fact to refute the State's summary judgment arguments that Plaintiffs were not entitled to rely on the representations of Mr. Marfeo.
 C Continuous Tort *Page 14 
In Plaintiffs' Memorandum in Support of Their Objection to Defendant State of Rhode Island's Motion for Summary Judgment, they argue in the alternative that the continuous tort rule also precludes Defendants from raising a statute of limitation defense. Because this Court finds that genuine issues of material fact exist and should be left to the trier of fact as to whether the State is estopped from asserting a statute of limitation defense,see Gagner, 423 A.2d 1170, it is unnecessary to reach the continuous tort argument.
 IV Conclusion
For the reasons set forth above, this Court hereby denies the State's Motion for Summary Judgment. An order consistent with this Decision shall be presented by counsel for Plaintiffs.
[1] Plaintiff Frank Caliri serves as the President of Aetna Mfg. Co., Inc.
[2] This Court notes that the communications between Plaintiffs' attorneys and Director Williams and Atty. Jacques began in March 2007, approximately ten (10) months after the statute of limitations expired according to the State.